EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| W.M.M., P.F.M., por sí y en representación de su hija menor de edad P.V.F.M.<br><br>Recurridos<br><br>v.<br><br>Puerto Rico Christian School, Inc.; Gabriel Amadis Ayala Monges; John Doe y Demandados de nombres desconocidos<br><br>Recurridos<br><br>AIG Insurance Company-Puerto Rico<br><br>Peticionario | Certiorari<br><br>2023 TSPR 48<br><br>211 DPR ___ |

Número del Caso: CC-2022-0126

Fecha: 17 de abril de 2023

Tribunal de Apelaciones:

Panel IX

Abogado de la parte peticionaria:

Lcdo. Fernando Sabater Clavell

Abogados de los recurridos:

**W.M.M. y otros**
Lcdo. Enrique A. Emmanuelli Ortiz

**Puerto Rico Christian School, Inc.**
Lcda. Miriam B. Toledo-David

Materia: Derecho de Seguros – Interpretación y aplicabilidad de una cláusula de exclusión de actos criminales en una póliza de seguro de directores y oficiales.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| W.M.M., P.F.M., por sí y en representación de su hija menor de edad P.V.F.M.<br><br>　　　　Recurridos<br><br>　　　　　v.<br><br>Puerto Rico Christian School, Inc.; Gabriel Amadis Ayala Monges; John Doe y Demandados de nombres desconocidos<br><br>　　　　Recurridos<br><br>AIG Insurance Company-Puerto Rico<br><br>　　　　Peticionario | CC-2022-126 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 17 de abril de 2023.

Este recurso nos presenta una controversia novel sobre la aplicación de una cláusula de exclusión de actos criminales bajo una póliza intitulada "Directors and Officers Not for Profit" (póliza D&O). En particular, debemos resolver si -a la luz de las normas de hermenéutica aplicables, los términos consignados en la póliza y su jurisprudencia interpretativa- la exclusión de cobertura por actos criminales aplica a las reclamaciones en este caso. Por los fundamentos que discutiremos más adelante, respondemos en la afirmativa.

Así, determinamos que la teoría de responsabilidad carece de relevancia para determinar si la exclusión de actos criminales en el contrato de seguro es aplicable, pues el factor determinante es si los daños, según alegados en la *Demanda*, surgen de las actuaciones ilícitas de un asegurado. En consecuencia, revocamos las determinaciones del Tribunal de Apelaciones y del Tribunal de Primera Instancia. A continuación, procedemos a relatar el historial fáctico y procesal pertinente a la controversia.

**I**

Allá para el 2013, el Sr. Gabriel A. Ayala Monges (señor Ayala Monges), mientras se desempeñaba como maestro en el Colegio Puerto Rico Christian School, Inc. (Colegio o asegurado), incurrió en un patrón de abuso sexual contra la estudiante P.V.F.M., quien para ese momento era menor de edad (estudiante o la menor). Tras identificar esta lamentable situación -y una vez concluido el proceso criminal en contra del señor Ayala Monges-, los padres de la menor, por sí y en representación de su hija (en conjunto, recurridos),[1] presentaron una *Demanda* sobre daños y perjuicios en contra del señor Ayala Monges, el Colegio y AIG Insurance Company-Puerto Rico (AIG o aseguradora).[2]

---

[1] Decidimos identificar a los recurridos mediante las iniciales de sus nombres como medida cautelar ante la divulgación de información íntima y sensitiva en el caso de epígrafe.

[2] La póliza núm. 025-001003520-01, intitulada "Directors and Officers Not for Profit" (póliza D&O), fue expedida por AIG Insurance Company-Puerto Rico (AIG o aseguradora) a favor del Colegio Puerto Rico Christian School, Inc., para cubrir por los daños de las reclamaciones realizadas dentro del periodo de vigencia de la póliza.

Los recurridos adujeron que el patrón de abuso sexual, al cual la estudiante fue expuesta, ocurrió en el Colegio durante el horario de clases y que la conducta se extendió por varios años. Señalaron que el señor Ayala Monges debía responder por su culpa y negligencia, puesto que, desde su posición como maestro, abusó de la confianza de la menor. Por ende, afirmaron que el señor Ayala Monges era responsable por los daños y perjuicios ocasionados bajo el Art. 1802 del Código Civil, 31 LPRA ant. sec. 5141.

En cuanto al Colegio, los recurridos alegaron que incurrió en negligencia y falta de previsibilidad al no impedir, a través de su personal, que el señor Ayala Monges cometiera las actuaciones delictivas. De esta forma, argumentaron que el Colegio fue negligente al contratar, adiestrar y supervisar al señor Ayala Monges, sin tomar las medidas necesarias para proteger a la estudiante. En ese sentido, indicaron que el Colegio era responsable por los daños y perjuicios causados al amparo de los Arts. 1802 y 1803 del Código Civil, 31 LPRA ant. secs. 5141 y 5142. Finalmente, agregaron que AIG debía responder por todos los daños reclamados bajo la póliza D&O que fue expedida por esta última a favor del Colegio.

El 3 de febrero de 2020, el señor Ayala Monges compareció por derecho propio al Tribunal de Primera Instancia para contestar la *Demanda*. Manifestó que permanecía confinado en la Institución Correccional de Máxima Seguridad de Guayama 1000, donde se encontraba cumpliendo una pena de

quince (15) años. Indicó que el tribunal de instancia impuso dicha sentencia como resultado de un preacuerdo mediante el cual éste se declaró culpable de siete (7) cargos por actos lascivos. Así pues, el señor Ayala Monges expresó que asumía la responsabilidad por los daños relacionados con la conducta delictiva por la cual se declaró culpable.

Posteriormente, la aseguradora presentó una *Contestación a demanda*. En esencia, planteó que la póliza de seguro expedida a favor del Colegio no proveía cubierta para los hechos alegados en la *Demanda*, pues los mismos emanaban de una actuación criminal que conllevaba la aplicación de cierta cláusula de exclusión. Específicamente, aludiendo a la cláusula de exclusión 4(b) de la póliza D&O, según enmendada mediante endoso (cláusula de exclusión 4(b)), la aseguradora sostuvo que:

> […] AIG no responder[ía] o ser[ía] responsable por cualquier pérdida o reclamación que sur[giera] de, se fundament[ara] en, o [fuera] atribuible a la comisión de cualquier acto criminal o de carácter fraudulento, siempre y cuando dicho acto criminal o fraudulento se h[ubiera] establecido mediante una sentencia o admisión de un individuo asegurado. En la medida que el acto criminal objeto de la *Demanda* fue establecido mediante sentencia en un procedimiento penal y/o admitido, la exclusión 4(b) es de aplicación, y no existe cubierta bajo la [p]óliza emitida por AIG.[3]

De otra parte, el Colegio presentó una *Contestación a demanda*. En resumen, planteó que los daños alegados en la *Demanda* fueron ocasionados por la conducta ilegal del señor

---

[3] *Contestación a demanda*, Apéndice del *certiorari*, pág. 40.

Ayala Monges, mas no por negligencia alguna de su parte. Consecuentemente, el Colegio sostuvo que no debía responder por dicha conducta, entre otras defensas afirmativas.

En este punto, AIG presentó una *Solicitud de sentencia por las alegaciones* y acompañó su solicitud con copia de la póliza D&O. En síntesis, reiteró que las alegaciones de los recurridos emanaban de la conducta delictiva del señor Ayala Monges, quien era un individuo asegurado bajo la referida póliza. Por ende, la aseguradora arguyó que las reclamaciones instadas en este caso no estaban cubiertas debido a la cláusula de exclusión 4(b).[4]

La aseguradora concedió que, según los términos del acuerdo, la conducta criminal del señor Ayala Monges no le podía ser imputada a otro "individuo asegurado" para propósitos de la aplicación de la exclusión. No obstante, argumentó que el Colegio no era un "individuo asegurado", sino una "organización" bajo la definición de "asegurados"

---

[4] En lo pertinente, la póliza D&O, según enmendada mediante endoso, provee lo siguiente:

"**4. Exclusions**

The Insurer shall not be liable to make any payment for Loss in connection with Claim made against an Insured:

a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

b) arising out of, based upon or attributable to the committing in fact of any criminal, or deliberate fraudulent act.

For the purpose of determining the applicability of exclusions (a) and (b), the Wrongful Act of any Individual Insured shall not be imputed to any other Individual Insured. These exclusions shall only apply in the event that any of the above is established by final adjudication of a judicial or arbitration tribunal or court of law, or admission by an Individual Insured that the relevant conduct did in fact occur". *Solicitud de sentencia por las alegaciones*, Apéndice del *certiorari*, págs. 76 y 91.

provista en la póliza. Por esta razón, AIG aseveró que la conducta del señor Ayala Monges le era imputable al Colegio y que, por consiguiente, la exclusión era aplicable a las reclamaciones interpuestas en este caso.

Por su parte, los recurridos se opusieron a la solicitud de la aseguradora. Argumentaron que los daños, según alegados en la *Demanda*, ocurrieron como resultado del reclutamiento, adiestramiento y supervisión del personal. A esos efectos, aseguraron que el manejo negligente del Colegio sobre su personal fue lo que permitió que se causaran los daños. Además, alegaron que la cláusula de exclusión 4(b) no era aplicable, ya que el señor Ayala Monges cometió el daño mientras se desempeñaba como maestro y su conducta sólo constituía uno (1) de los tres (3) elementos de la acción de daños y perjuicios, entiéndase, el daño *per se*. En tal sentido, afirmaron que la póliza ofrecía cubierta para las alegaciones de negligencia expuestas en la *Demanda*.

El Colegio también se opuso a la solicitud de la aseguradora. Arguyó que ni siquiera era capaz de cometer los actos criminales por los cuales el señor Ayala Monges se declaró culpable. En esa línea, el Colegio puntualizó que las alegaciones en su contra se limitaban a actuaciones negligentes que no estaban contempladas en la exclusión de la póliza. De ese modo, planteó que existía una controversia genuina y sustancial en cuanto a la aplicación de la cláusula de exclusión 4(b).

Posteriormente, AIG reafirmó su postura mediante una *Réplica consolidada a las oposiciones presentadas por la demandante y codemandada*. Indicó que para saber si la exclusión era aplicable, el tribunal debía determinar si la reclamación **"surgía de, se fundamentaba en o era atribuible a"** la comisión de un acto criminal admitido por un individuo asegurado o establecido mediante la adjudicación final de un tribunal. En particular, la aseguradora sostuvo que - según el análisis conferido por otros tribunales de Estados Unidos sobre la frase **"arising out of"**- procedía la desestimación de la acción en su contra, ya que las reclamaciones presentadas, así como los daños alegados, surgían de la conducta delictiva excluida bajo los términos y condiciones de la póliza. Finalmente, tanto los recurridos como el Colegio presentaron sus respectivas dúplicas y reiteraron sus argumentos.

Así las cosas, el 10 de noviembre de 2021, el tribunal de instancia denegó la *Solicitud de sentencia por las alegaciones* mediante una *Resolución y orden*. Luego de analizar las alegaciones de la *Demanda* y el texto de la exclusión en cuestión, el foro primario razonó que **"los daños surgidos como consecuencia del acto criminal del [señor] Ayala Monges, no est[aban] cubiertos por la [p]óliza"**. (Negrillas suplidas).[5] Sin embargo, determinó

---

[5] *Resolución y orden* emitida por el Tribunal de Primera Instancia, Apéndice del *certiorari*, pág. 243.

que las alegaciones relacionadas a los daños reclamados contra el Colegio -por su propia negligencia y falta de supervisión- constituían actos ilícitos ("wrongful acts") que activaban la cubierta de la póliza por pertenecer a una categoría distinta.

De igual forma, el tribunal de instancia descartó la aplicación de la cláusula de exclusión 4(b) en cuanto al Colegio, fundamentándose en el hecho de que el texto de la exclusión disponía que "un acto [ilícito] ("[w]rongful [a]ct") de un individuo asegurado no se le imputar[ía] a otro individuo asegurado".[6]  Por último, al concluir que no procedía desestimar la *Demanda* en contra de AIG, el foro primario expuso lo siguiente:

> […] no hay alegación en la *Demanda* de que [el Colegio] haya cometido por sí mismo un delito.  Lo que se le imputa es la negligencia en el desempeño de sus funciones de reclutamiento y supervisión.  Dicha conducta, va más allá de cualquier responsabilidad vicaria que [el Colegio] pudiera tener por las actuaciones del [señor] Ayala Monges y no queda excluida por la sección 4 de la [p]óliza.

Inconforme, AIG presentó una *Petición de certiorari* ante el Tribunal de Apelaciones.  La aseguradora adujo que el foro de instancia erró en su interpretación, pues los daños alegados surgían de una actuación criminal, conducta que se encontraba excluida en la póliza.  En contraste con lo

---

[6]  *Resolución y orden* emitida por el Tribunal de Primera Instancia, Apéndice del *certiorari*, pág. 244.

expuesto por AIG, los recurridos argumentaron que existía una cubierta por la negligencia del Colegio bajo la póliza expedida por la aseguradora. Entretanto, el Colegio aseveró que los planteamientos de AIG resultaban contrarios a la póliza D&O y el derecho aplicable.

Tras examinar los escritos de las partes, el Tribunal de Apelaciones emitió una *Resolución* el 27 de enero de 2022. En esencia, sostuvo que la *Demanda* contenía alegaciones directas contra el Colegio como custodio de la menor y supervisor del señor Ayala Monges. De esta manera, el foro apelativo intermedio aseveró que no era posible adjudicar, en esa etapa de los procedimientos, si AIG estaba obligada a proveer cubierta o si procedía aplicar alguna exclusión contenida en la póliza. Asimismo, expresó que los casos resueltos por otros tribunales de Estados Unidos "[eran] s[ó]lo de naturaleza persuasiva y no representa[ban], necesariamente, la única conclusión razonable a la cual proced[ía] arribar bajo el escenario de alegaciones esbozadas por las partes".[7] En consecuencia, el tribunal apelativo intermedio denegó expedir el recurso presentado por la aseguradora.

Oportunamente, AIG presentó una *Petición de certiorari* ante este Tribunal y señaló los errores siguientes:

> Erró el [Tribunal de Apelaciones] al denegar expedir la petición de *certiorari* y no

---

[7] *Resolución* emitida por el Tribunal de Apelaciones, Apéndice del *certiorari*, pág. 274.

revocar la resolución y orden dictada por el [Tribunal de Primera Instancia], denegando la solicitud de sentencia por las alegaciones a pesar de que los daños alegados en la demanda surgen de, se fundamentan en, y son atribuibles a la comisión de un delito que fue admitid[o] por el [señor] Ayala y adjudicado por un tribunal.

Erró el [Tribunal de Apelaciones] al concluir que no era posible adjudicar si AIG está obligado o no a proveer cubierta, o si procede aplicar alguna exclusión contenida en la póliza, aun cuando dicho ejercicio se realiza analizando las alegaciones de la demanda.

Erró el [Tribunal de Apelaciones] al ignorar la norma de hermen[é]utica enunciada por el Tribunal Supremo de Puerto Rico en Mel[é]ndez Piñero v. Levitt & Sons of [P.R.], 129 DPR 521 (1991)[,] y no tomar en consideración la interpretación dada por los tribunales a la frase "[a]rising out of" contenida en la exclusión aplicable.

El 29 de abril de 2022, expedimos el recurso de *certiorari* solicitado. Durante el trámite apelativo, la aseguradora presentó su alegato el 22 de junio de 2022, mientras que los recurridos y el Colegio presentaron los suyos el 21 y 22 de julio de 2022, respectivamente. Así las cosas, el caso quedó sometido en los méritos el 29 de julio de 2022.

Contando con el beneficio de los alegatos de las partes, procedemos a exponer el derecho aplicable.

## II

### A. La moción para que se dicte sentencia por las alegaciones

La Regla 10.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.3, gobierna el procedimiento relacionado con la

solicitud para que se dicte una sentencia por las alegaciones. La referida regla dispone lo siguiente:

> Después que se hayan presentado todas las alegaciones, cualquier parte podrá solicitar al tribunal que dicte sentencia parcial o total por las alegaciones, sujeto a las disposiciones de la Regla 42.3 de este apéndice. Si en una moción en la que se solicite sentencia por las alegaciones se exponen materias no contenidas en dichas alegaciones y éstas no son excluidas por el tribunal, la moción deberá considerarse como una solicitud de sentencia sumaria y estará sujeta hasta su resolución final a todos los trámites ulteriores dispuestos en la Regla 36 de este apéndice, y todas las partes tendrán una oportunidad razonable de presentar todo asunto pertinente a dicha moción conforme a lo provisto en la citada regla. Íd.

Este mecanismo se puede utilizar después de que se haya contestado la demanda y cuando de las alegaciones surja que no hay controversia sustancial de hechos, de manera que la celebración de un juicio en su fondo para dilucidar la prueba resulte innecesaria. Montañez v. Hosp. Metropolitano, 157 DPR 96, 102 (2002); P.A.C. v. E.L.A. I, 150 DPR 359, 377 (2000). Asimismo, "[e]l [t]ribunal puede suplementar los hechos contenidos en las alegaciones considerando documentos anejados o incorporados a éstas y hechos susceptibles de conocimiento judicial". J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., San Juan, Pubs. JTS, 2011, T. II, pág. 544.

Cuando la parte demandada solicita que se dicte sentencia por las alegaciones, todos los hechos bien alegados en la demanda se consideran admitidos, pero tales admisiones sólo se aceptan para propósitos de la moción y

no constituyen una renuncia a cualquier controversia material que deba dilucidarse mediante prueba en el juicio. Rivera v. Otero de Jové, 99 DPR 189, 195 (1970); Sepúlveda v. Casanova, 72 DPR 62, 68 (1951). Igualmente, las alegaciones deben evaluarse de la manera más favorable al promovido. Cuevas Segarra, *op. cit.* De este modo, "[e]l tribunal aplicará el derecho a las alegaciones y dictará la sentencia que corresponda". R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, sec. 2611, pág. 312.

**B. El contrato de seguro**

En reiteradas ocasiones hemos reconocido que la industria de seguros en Puerto Rico está investida de un alto interés público debido al gran papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de la ciudadanía. San Luis Center Apts. *et al.* v. Triple-S, 2022 TSPR 18, 298 DPR ___ (2022); Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1019 (2020); R.J. Reynolds v. Vega Otero, 197 DPR 699, 706 (2017). En específico, los seguros cumplen una función social importante al atenuar los riesgos inherentes a las relaciones comerciales mientras que promueven el crecimiento estable de la economía. Rivera Matos *et al.* v. Triple-S *et al.*, *supra*; R.J. Reynolds v. Vega Otero, *supra*, págs. 706-707.

Debido a su trascendencia, esta industria ha sido extensamente reglamentada mediante la Ley Núm. 77 de 19 de

junio de 1957, según enmendada, conocida como el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, y a su vez se encuentra sujeta a las disposiciones del Código Civil de manera supletoria. San Luis Center Apts. *et al.* v. Triple-S, *supra*; R.J. Reynolds v. Vega Otero, *supra*, pág. 707. Mediante el contrato de seguro, una parte se obliga a indemnizar, pagar o proveer un beneficio específico o determinado a otra parte si se produce un suceso incierto previsto en el mismo. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102; Viruet *et al.* v. SLG Casiano-Reyes, 194 DPR 271, 278 (2015). Así, las personas y los negocios pueden proteger sus recursos al transferir el impacto monetario de ciertos riesgos a cambio del pago de una prima. R.J. Reynolds v. Vega Otero, *supra*, pág. 707; Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880, 897 (2012).

**C. Las normas de hermenéutica**

Como es sabido, la póliza es el documento en el que se exponen por escrito los términos que rigen el contrato de seguro. Art. 11.140 del Código de Seguros, 26 LPRA sec. 1114(1). Según las normas de hermenéutica pautadas en el Código de Seguros, **las cláusulas contenidas en una póliza deben interpretarse de manera global**, es decir, a base del conjunto total de los términos según consignados, ampliados, extendidos o modificados mediante aditamento, endoso o solicitud adherida a la póliza. Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. Véanse, además: San Luis Center Apts. *et al.* v. Triple-S, *supra*; R.J. Reynolds v. Vega Otero,

*supra*, págs. 707-708; Viruet *et al*. v. SLG Casiano-Reyes, *supra*, pág. 279.   Al analizar los términos del acuerdo, los tribunales deben buscar su sentido o significado desde la óptica de un ciudadano de inteligencia promedio interesado en adquirir la póliza.   Rivera Matos *et al*. v. Triple-S *et al.*, *supra*, pág. 1021; Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 898.

Igualmente, "[l]os términos de los contratos de seguro se rigen por las normas de interpretación aplicables a los contratos en general".   (Cita omitida).   San Luis Center Apts. *et al*. v. Triple-S, *supra*.   En consecuencia, el lenguaje establecido en la póliza debe ser interpretado en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical.   Art. 15 del Código Civil, 31 LPRA ant. sec. 15; Rivera Matos *et al*. v. Triple-S *et al.*, *supra*, pág. 1020; S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 72-73 (2011); Jiménez López *et al*. v. SIMED, 180 DPR 1, 10 (2010).   Esto permite que las personas que adquieran una póliza puedan conocer fácilmente el alcance de la cubierta que se les ofrece.   Rivera Matos *et al*. v. Triple-S *et al.*, *supra*; S.L.G. Ortiz-Alvarado v. Great American, *supra*, pág. 73.

Por último, "debido a que el contrato de seguro es un contrato de adhesión, las cláusulas dudosas o ambiguas deberán interpretarse liberalmente en beneficio del asegurado".   San Luis Center Apts. *et al*. v. Triple-S, *supra*. Sin embargo, cabe señalar que **"este principio de**

**hermenéutica no aplicará cuando las cláusulas en cuestión resulten claras y libres de ambigüedad"**. (Negrillas suplidas). Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 899. En ese sentido, **los términos del contrato de seguro se consideran claros cuando su lenguaje es específico y no está sujeto a dudas o diferentes interpretaciones.** San Luis Center Apts. *et al*. v. Triple-S, *supra*. Por lo tanto, ante la ausencia de ambigüedad en las cláusulas del contrato, éstas son obligatorias y su contenido constituye la ley entre las partes. Íd.; R.J. Reynolds v. Vega Otero, *supra*, pág. 708.

**D. La póliza de directores y oficiales**

**1. Introducción**

Se han establecido distintos tipos de seguros para atenuar los riesgos inherentes a la gran variedad de actividades económicas y profesionales que las personas asumen a diario. San Luis Center Apts. *et al*. v. Triple-S, *supra*. En lo pertinente al caso que nos ocupa, la póliza de seguro D&O procura proteger el patrimonio de los directores y oficiales, así como el de las corporaciones, frente a determinadas reclamaciones. 4 *New Appleman on Insurance Law Library Edition* sec. 26.01[1], pág. 26-4 (2021). No obstante, ésta no cubre muchos de los riesgos que puedan ser asegurados mediante otros tipos de seguros.[8]

---

[8]   En Guerrido García v. U.C.B., 143 DPR 337 (1997), este Tribunal reconoció las razones siguientes para ello:

    "The D&O policy does not cover all insurable liability risks of directors and officers for two basic reasons. First, at the time the

En <u>Guerrido García v. U.C.B.</u>, 143 DPR 337, 344 (1997), señalamos que las pólizas D&O, tradicionalmente, contienen dos (2) cubiertas distintas: (1) la personal para directores y oficiales o "Side A", y (2) la de reembolso corporativo o "Side B". En ese caso expresamos que estas cubiertas no incluyen a la corporación en función de su propia responsabilidad, ya que el propósito primordial de este tipo de póliza es proteger a los directores y oficiales asegurados. <u>Íd.</u> Empero, hoy día muchas pólizas D&O contienen una tercera cubierta que se conoce como la cubierta de entidad o "Side C", la cual protege a la corporación de reclamaciones en su contra y, del mismo modo, **se encuentra sujeta a las exclusiones consignadas en la póliza**. 4 *New Appleman on Insurance Law Library Edition* sec. 26.05[1], pág. 26-25 (2021).

La necesidad de adquirir este tipo de póliza por parte de las corporaciones aumentó significativamente durante la década de los ochenta debido a la proliferación de

---

D&O policy was being developed some policies already existed affording certain limited coverage to directors and officers and therefore neither the insurance industry nor the consumer corporations wanted to duplicate that other existing coverage in the D&O policy. A notable example is the corporate general liability policy, which insures both the corporation and its directors and officers against liability for bodily injury and property damage.

Second, as particularly volatile or unique liability exposures developed over the last twenty years, separate insurance policies were developed to address those risks. Underwriters preferred this approach because it permitted the use of an insurance policy form tailored to the unique characteristics of the exposure and needs of the insured. In addition, insurers are better able to develop and utilize specialized underwriting expertise through use of narrow, more focused policy lines". <u>Guerrido García v. U.C.B.</u>, *supra*, pág. 346 (citando a W.E. Knepper y D.A. Bailey, *Liability of Corporate Officers and Directors*, 5ta ed., Charlottesville, The Michie Co., 1993, Vol. 2, págs. 471-472).

reclamaciones contra directores y oficiales corporativos. Guerrido García v. U.C.B., *supra*, pág. 343. Así pues, la póliza D&O sirvió como herramienta para atraer y retener a los mejores candidatos directivos ante la amenaza de posibles litigios. S. Plitt y otros, 9A *Couch on Insurance*, 3ra ed., sec. 131:30 (2022). Más adelante, durante la década de los noventa, se empezaron a comercializar productos específicamente diseñados para las organizaciones sin fines de lucro. J.F. Olson y otros, *Director and Officer Liability Indemnification and Insurance*, sec. 12:2 (2021). A raíz de ello, en años relativamente recientes, se han desarrollado pólizas D&O para entidades educativas y de salud, entre otras. W.E. Knepper y D.A. Bailey, *Liability of Corporate Officers and Directors*, 8va ed., LexisNexis, 2015, Vol. II, sec. 28.04, pág. 28-30. Las pólizas de seguros D&O, tanto para las organizaciones sin fines de lucro como para las corporaciones con fines de lucro: (1) constituyen pólizas tipo "claims made"; (2) describen las actuaciones y omisiones cubiertas, y (3) excluyen las reclamaciones por conducta deshonesta o fraudulenta, daños corporales y daños a la propiedad, entre otras. Íd.

Más allá de proteger a la propia entidad, las pólizas D&O para las organizaciones sin fines de lucro típicamente incluyen como asegurados a empleados, miembros de comité, voluntarios y miembros de facultad. 4 *New Appleman on Insurance Law Library Edition* sec. 26.06[2], pág. 26-33. El término "asegurado" usualmente se define en una póliza D&O

como "compañía u organización" y "personas aseguradas". Íd., sec. 26.06[2], pág. 26-32. En este aspecto, es importante enfatizar que un asegurado no es lo mismo que una persona asegurada y que, por lo general, las cláusulas habrán de referirse específicamente a uno o el otro a lo largo de la póliza. Íd. Por consiguiente, las definiciones utilizadas en el acuerdo deben interpretarse cuidadosamente, pues los significados pueden variar de póliza en póliza. Íd.

### 2. La exclusión de actos criminales

Debemos recordar que "**un seguro no responde por toda gestión imaginable del asegurado que pueda causar daño a terceros**". (Negrillas suplidas). Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 900. Cónsono con lo antes expuesto, "[l]a cubierta se circunscribe a determinadas actividades específicamente delimitadas en la póliza conjuntamente con las exclusiones allí dispuestas, donde se exceptúan ciertas actividades por las que no viene obligado a indemnizar". Íd. Por consiguiente, para precisar el alcance de la protección que ofrece una póliza, resulta necesario evaluar si el contrato contiene cláusulas de exclusión que exceptúen determinados eventos, riesgos o peligros de la cubierta. Rivera Matos *et al.* v. Triple-S *et al.*, *supra*, pág. 1021.

Como regla general, las exclusiones son desfavorecidas y se interpretan restrictivamente en contra de la aseguradora para que se cumpla el propósito principal de los

seguros, esto es, proteger al asegurado. Íd.; Viruet *et al.* v. SLG Casiano-Reyes, *supra*, pág. 279. **Sin embargo, cuando las cláusulas de exclusión son claras y aplican a una situación determinada, la aseguradora no será responsable por los riesgos expresamente excluidos.** Rivera Matos *et al.* v. Triple-S *et al.*, *supra*, pág. 1021. En estos casos, le corresponde al asegurado establecer que su reclamación está comprendida en la póliza, mientras que la aseguradora tiene el peso de demostrar la aplicación de alguna exclusión. Íd., pág. 1022.

Generalmente, existen cuatro (4) categorías de exclusiones en las pólizas D&O: (1) las exclusiones de "conducta"; (2) las exclusiones por "otros seguros"; (3) las exclusiones de "reclamantes", y (4) las exclusiones denominadas "laser". 4 *New Appleman on Insurance Law Library Edition* sec. 26.07[2], pág. 26-40 (2021). En lo que nos atañe, las exclusiones de "conducta" pretenden eliminar ciertos comportamientos cuya cobertura se considera inapropiada. Íd. Algunas cláusulas, a modo de ejemplo, pueden excluir reclamaciones de daños que surjan de actuaciones "fraudulentas, deshonestas o criminales". Knepper y Bailey, *op. cit.*, sec. 25.03, pág. 25-8. Muchas de estas exclusiones requieren que la conducta se establezca mediante la admisión de un asegurado o una adjudicación final para su activación. Véase 4 *New Appleman on Insurance Law Library Edition* sec. 26.07[3], págs. 26-41 a 26-42 (2021).

Por otro lado, para determinar si la conducta de un asegurado le puede ser imputada a otro asegurado para fines de la exclusión, es necesario evaluar si se incorporó alguna disposición de divisibilidad o inimputabilidad que delimite su aplicación. Olson y otros, *op. cit.*, sec. 12:15; 3 *New Appleman Insurance Law Practice Guide* sec. 37.13[1], pág. 37-52 (2019). En el contexto de una póliza D&O con cubierta de entidad, es de particular importancia analizar: (1) si los actos de la entidad asegurada no son imputables a los individuos asegurados, y (2) si los actos de los individuos asegurados no son imputables a la entidad asegurada. Olson y otros, *op. cit.* La ausencia de este tipo de disposiciones, por ejemplo, puede llevar a que la conducta de un asegurado le sea imputable a otros asegurados, dejándolos desprovistos de cobertura. Olson y otros, *op. cit.*, sec. 12:2.

De igual forma, debe considerarse la amplitud del lenguaje utilizado en la exclusión. 3 *New Appleman Insurance Law Practice Guide*, sec. 37.13[1], pág. 37-52 (2019). No obstante, al no existir un modelo estándar para las cláusulas de exclusión de actos criminales, el lenguaje particular de cada cláusula debe ser examinado meticulosamente para determinar su alcance. <u>Íd.</u>, sec. 37.13[7], pág. 37-56. De esta manera, el hecho de que la actuación de un asegurado excluya o no de la cubierta a otro asegurado que no participó de esa actuación dependerá

del lenguaje específico de la exclusión en cuestión. Íd., sec. 30.18[3], pág. 30-116.

3. **La frase "arising out of"**

En Meléndez Piñero v. Levitt & Sons of P.R., 129 DPR 521, 541 (1991), este Foro expresó que no existía duda respecto al significado de unas exclusiones que contenían la frase "arising out of" en el contexto de un seguro comprensivo de responsabilidad general. **Tras analizar la tendencia jurisprudencial en Estados Unidos, este Foro sostuvo que el lenguaje allí utilizado no era ambiguo ni mucho menos obscuro**, pues claramente informaba que la póliza no cubriría los daños ocasionados como consecuencia del trabajo realizado. Íd. Aunque este Tribunal no ha tenido la oportunidad de interpretar el alcance de la frase "arising out of",[9] existe abundante jurisprudencia estadounidense interpretativa que nos ilustra al respecto.[10]

La mayoría de los tribunales estatales y federales, incluso el Primer Circuito del Tribunal de Apelaciones de Estados Unidos y el Tribunal Federal para el Distrito de Puerto Rico, han favorecido una interpretación amplia de la

---

[9] La palabra "arising" se traduce al español como "surgiendo de" o "procediendo de". S.M. Kaplan, *Essential English/Spanish and Spanish/English Legal Dictionary*, Nueva York, Kluwer Law International, 2008, pág. 24.

[10] En repetidas ocasiones hemos reconocido la utilidad de la jurisprudencia estatal y federal de Estados Unidos en el desarrollo de nuestro Derecho de Seguros. Véanse: Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1023 esc. 8 (2020); Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880, 904 esc. 7 (2012); Monteagudo Pérez v. E.L.A., 172 DPR 12, 19 esc. 2 (2007); Molina v. Plaza Acuática, 166 DPR 260, 266 (2005); Guerrido García v. U.C.B., *supra*, págs. 347-348; Meléndez Piñero v. Levitt & Sons of P.R., 129 DPR 521, 535 (1991).

frase "arising out of".[11] El consenso general es que el uso de esta fraseología no requiere una conexión de causa próxima, sino que más bien supone una relación incidental a la conducta descrita en la exclusión.[12] De esta forma, los tribunales han interpretado que el mencionado texto es claro, adscribiéndole un significado similar a frases como "que se origina de", "incidental a" o "que tiene una conexión con", entre otras.  (Traducción suplida).[13]

Por otro lado, se ha indicado que cuando el lenguaje de una exclusión dispone que no se cubrirán los daños **que surjan de** ciertas situaciones o eventos, resulta improcedente que se provea cobertura para éstos **independientemente de la teoría de responsabilidad que se alegue contra un asegurado**. Véase A.D. Windt, 3 *Insurance Claims and Disputes*, 6ta ed., sec. 11:22A (2022).  De este modo, una reclamación que claramente se encuentra excluida de la cobertura de la

---

[11]   Veánse: Murdock v. Dinsmoor, 892 F.2d 7, 8 (1er Cir. 1989) ("The New Hampshire courts follow the widely accepted practice of interpreting the phrase 'arising out of' broadly and comprehensively"); Reyes Lopez v. Misener Marine Const., Inc., 664 F. Supp. 652 (D.P.R. 1987), aff'd sub nom. Reyes-Lopez v. Misener Marine Const. Co., 854 F.2d 529 (1er Cir. 1988).

[12]   Veánse: Penn-Am. Ins. Co. v. Lavigne, 617 F.3d 82, 87 (1er Cir. 2010) ("Under Maine law, as elsewhere, phrases such as 'arising out of,' when used in insurance contracts, do not connote a direct causal nexus"); Scottsdale Ins. Co. v. Texas Sec. Concepts & Investigation, 173 F.3d 941, 943 (5to Cir. 1999) ("A claim need only bear an incidental relationship to the described conduct for the exclusion to apply").

[13]   Veánse, por ejemplo: Continental Cas. Co. v. City of Jacksonville, 654 F. Supp. 2d 1338, 1344 (M.D. Fla. 2009), aff'd, 384 Fed. Appx. 900 (11mo Cir. 2010) ("[The phrase] [a]rising out of is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having connection with'"); Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co., 913 So. 2d 528, 539 (Fla. 2005); American Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1194-96 (R.I. 2002).

póliza no puede convertirse en un riesgo cubierto mediante alegaciones que se ajusten al lenguaje de la póliza.[14] Consecuentemente, al analizar un lenguaje similar al de la exclusión en cuestión, los tribunales han resuelto que las reclamaciones sobre alegada supervisión negligente quedan excluidas de la cubierta.

A modo de ejemplo, en Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 99 F.3d 695 (5to Cir. 1996), el Tribunal de Apelaciones para el Quinto Circuito determinó que unas reclamaciones sobre supervisión negligente contra un distrito escolar y otros maestros se encontraban excluidas de la póliza expedida a su favor. Allí, se reconoció que los daños reclamados **surgían del** abuso sexual cometido por un maestro contra unos estudiantes de segundo grado.  Por tanto, se estableció que la exclusión por actos criminales inequívocamente era de aplicación a las reclamaciones presentadas contra el distrito escolar y otros maestros, aun cuando éstos no cometieron los actos.

Del mismo modo, en All American Ins. Co. v. Burns, 971 F.2d 438 (10mo Cir. 1992), se atendió una controversia sobre la aplicación de una exclusión por la actuación criminal de un individuo asegurado.  El Tribunal de Apelaciones para el Décimo Circuito denegó la cubierta de

---

[14] "[A] claim clearly excluded from policy coverage cannot be turned into a covered risk by styling the pleadings to fit the policy language. For example, a claimant cannot avoid the effect of an illegal act exclusion by styling the claim as one for negligent supervision of the embezzler". (Escolio omitido). S. Plitt y otros, 9 *Couch on Insurance*, 3ra ed., sec. 126:3.

una reclamación en contra de una Iglesia y varios miembros de su junta directiva, ya que los daños alegados **surgían de** la actuación de un voluntario que abusó sexualmente de dos (2) niñas mientras se desempeñaba como conductor de autobús. A esos efectos, el tribunal concluyó que el texto de la exclusión era claro, por lo que procedía su aplicación.

De manera análoga, en Am. Com. Ins. Co. v. Porto, 811 A.2d 1185 (R.I. 2002), el Tribunal Supremo de Rhode Island resolvió que una exclusión le aplicaba a un reclamo sobre supervisión negligente contra un líder de una tropa de "Boy Scouts". Éste era el encargado de supervisar a otro líder que abusó sexualmente de un menor cuando era miembro de la tropa. El tribunal resolvió que procedía la aplicación de la exclusión, toda vez que los daños alegados **surgían de** la conducta excluida. Por último, el Tribunal Supremo de Nuevo Hampshire concluyó que los reclamos contra unos padres por la supervisión negligente de su hijo, quien abusó sexualmente de otros menores, se encontraban desprovistos de cobertura ya que los daños alegados **surgían de** la conducta excluida en la póliza. Philbrick v. Liberty Mut. Fire Ins. Co., 156 N.H. 389, 934 A.2d 582 (2007).

### III

AIG alega que las reclamaciones subyacentes en la *Demanda* se encuentran excluidas de la cubierta provista en la póliza D&O. Particularmente, sostiene que el daño objeto de la *Demanda* **"surge de"** la actuación criminal que comprende el abuso sexual cometido por el señor Ayala Monges contra

la estudiante mientras cursaba estudios intermedios. Por consiguiente, la aseguradora afirma que la cláusula de exclusión 4(b) aplica independientemente de la teoría de responsabilidad esbozada en la *Demanda*, ya que los daños reclamados surgen de la conducta ilegal admitida por el señor Ayala Monges y adjudicada por un tribunal. A la luz del marco legal antes reseñado, determinamos que le asiste la razón. Por estar estrechamente relacionados entre sí, procedemos a discutir en conjunto los tres (3) errores señalados.

En lo que a las cubiertas concierne, la póliza D&O dispone lo siguiente:

**1. INSURING AGREEMENTS**
**COVERAGE A: INDIVIDUAL INSURED INSURANCE**
This policy shall pay on behalf of each and every Individual Insured Loss arising from a Claim first made against such Individual Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in his/her respective capacities as an Individual Insured of the Organization, except when and to the extent that the Organization has indemnified the Individual Insured. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

. . . . . . . .

**COVERAGE C: ORGANIZATION ENTITY COVERAGE**
This policy shall pay on behalf of the Organization Loss arising from a Claim first made against the Organization during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of the Organization. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition. (Negrillas en el

original). *Solicitud de sentencia por las alegaciones*, Apéndice del *certiorari*, pág. 70.

Por otro lado, la póliza D&O provee las definiciones siguientes:

**1.DEFINITIONS**

. . . . . . . .

b) "Claim" means:

1) a written demand for monetary relief; or

2) a civil, criminal, regulatory or administrative proceeding for monetary or nonmonetary relief which is commenced by:

i. service of a complaint or similar pleading; or
ii. return of an indictment (in the case of a criminal proceeding); or
iii. receipt or filing of a notice of charges; or

3) any request to toll or waive any statute of limitations.

The term "Claim" shall include an Employment Practices Claim, provided however, that in no event shall the term "Claim" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

. . . . . . . .

**i) "Individual Insured(s)"** means a past, present or future duly elected or appointed director, officer, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the Organization), **staff or faculty member (salaried or non-salaried), Employee or volunteer of the Organization.** Coverage will automatically apply to all new persons who become Individual Insureds after the inception date of this policy.

**j) "Insured(s)"** means the **Organization** and all **Individual Insureds.**

k) "Loss" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act and Defense Costs; however, Loss shall not include: 1) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; 2) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (3) any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with an educational, sensitivity or other corporate program, policy or seminar relating to an Employment Practices Claim; or (4) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

If an additional premium is stated in Item 7B of the Declarations page, the Loss shall specifically include, (subject to the policy's other terms, conditions and exclusions) punitive, exemplary and multiple damages. It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages. If an additional premium is not stated in item 7B of the Declarations, then Loss shall not include punitive, exemplary damages or the multiplied portion of multiple damages. In all events, coverage shall not be provided to any particular Insured who has been adjudicated to have obtained a profit or advantage or committed a fraudulent or dishonest act or willful violation of any statute, rule or law.

.   .   .   .   .   .   .   .

n) The "Organization" means: **(1) the Named Organization designated in Item 1 of the Declarations;** (2) any Subsidiary thereof; and (3) any Affiliate thereof listed by endorsement to this policy.

. . . . . . . .

u) "Wrongful Act" means:

1) with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Individual Insureds in his/her respective capacities as such, or any matter claimed against such Individual Insured solely by reason of his/her status as Individual Insureds of the Organization;

2) with respect to the Organization under Coverage C, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the Organization;

3) with respect to service on an Outside Entity, any matter claimed against such Individual Insureds arising out of such Insured serving as a director, trustee, trustee emeritus or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Organization;

4) with respect to both the Individual Insureds and the Organization and subject to paragraphs 1, 2 and 3 above, "Wrongful Act" shall specifically include:

   a) Employment Practices Claims;
   b) Non-Employment Discrimination;
   c) violation of the Sherman Antitrust Act or similar federal, state or local statutes or rules;
   d) libel, slander, defamation or publication or utterance in violation of an individual's right of privacy;
   e) wrongful entry or eviction or other invasion of the right of occupancy;

          f) false arrest or wrongful
             detention;
          g) plagiarism; and
          h) infringement of copyright or
             trademark or unauthorized use
             of title. (Negrillas
             suplidas). *Solicitud de*
             *sentencia por las alegaciones*,
             Apéndice del *certiorari*, págs.
             71-73, 75.

Finalmente, la exclusión en controversia dispone como sigue:

**4. Exclusions**

The Insurer shall not be liable to make any payment for Loss in connection with Claim made against **an Insured**:

a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

**b) arising out of, based upon or attributable to the committing in fact of any criminal, or deliberate fraudulent act.**

For the purpose of determining the applicability of exclusions (a) and (b), **the Wrongful Act of any Individual Insured shall not be imputed to any other Individual Insured.** These exclusions shall only apply in the event that any of the above is established by final adjudication of a judicial or arbitration tribunal or court of law, or admission by an Individual Insured that the relevant conduct did in fact occur. (Negrillas suplidas). Íd., págs. 76 y 91.

Según señaláramos, los términos utilizados en el acuerdo deben ser interpretados cuidadosamente y de manera global. Ello implica un análisis integral de las actuaciones y omisiones cubiertas, así como de las exclusiones consignadas en la póliza. Cónsono con ésto, luego de que un asegurado logra establecer que su reclamación está comprendida dentro

de los términos de la póliza, es la aseguradora quien tiene el peso de demostrar la aplicación de alguna exclusión. De esta forma, el Colegio sostiene que los daños reclamados están cubiertos bajo la póliza, mientras que AIG se apoya en la vasta jurisprudencia interpretativa para demostrar que, a base de las alegaciones en la *Demanda* y los términos del contrato de seguro, la exclusión de actos criminales sí aplica a las reclamaciones presentadas. Veamos.

La redacción de la cláusula de exclusión 4(b) refleja claramente que puede aplicarse a diversos asegurados bajo la póliza. Al analizar el lenguaje de la cláusula, encontramos que la única delimitación consignada para fines de la aplicación de la exclusión consiste en que la conducta de un individuo asegurado no le puede ser imputada a otro individuo asegurado. Esto es cónsono con el propósito primordial de este tipo de seguro, pues con ello se busca proteger a los directores, oficiales o empleados inocentes. Ahora bien, nótese que el Colegio, por definición, no es un "individuo asegurado", sino una "organización". En consecuencia, la cláusula de inimputabilidad no impide que la conducta del señor Ayala Monges le sea atribuida al Colegio para fines de la exclusión. Después de todo, la cubierta de entidad que protege al Colegio también se encuentra sujeta a las exclusiones establecidas en la póliza.

Por otro lado, la frase "arising out of" ha sido interpretada de manera amplia por gran parte de los

tribunales en Estados Unidos. Una vez más, reafirmamos la gran utilidad y el alto valor persuasivo de la jurisprudencia estadounidense en el Derecho de Seguros. Por tal razón, adoptamos la doctrina mayoritaria en cuanto a la interpretación expansiva de esta frase, sobre la cual no existe ambigüedad. El argumento de que el lenguaje de la exclusión no le aplica al reclamo de contratación y supervisión negligente no nos convence. En definitiva, los daños alegados bajo dicho reclamo surgen de la conducta descrita en la exclusión.

Luego de analizar las alegaciones de la *Demanda* desde la óptica más favorable a los recurridos, y a la luz de las normas de hermenéutica aplicables, los términos específicos de la exclusión y su jurisprudencia interpretativa, determinamos que las reclamaciones instadas en este caso quedan excluidas de la póliza D&O. De igual forma, resolvemos que la teoría de responsabilidad civil carece de relevancia para determinar si la exclusión en el contrato de seguro es aplicable, pues lo determinante es que todos los daños, según alegados en la *Demanda*, surgen de los actos criminales del señor Ayala Monges. La conducta que la aseguradora pretendió excluir fue admitida por el señor Ayala Monges y se estableció mediante la adjudicación final del tribunal que lo sentenció, lo cual activó la cláusula de exclusión conforme a sus propios términos.[15]

---

[15] AIG solicitó que el tribunal de instancia tomara conocimiento judicial de este hecho, conforme a la Regla 201 de las Reglas de

**El texto de la exclusión en controversia es claro y no da margen a dudas en cuanto a su significado. No existe ambigüedad ni obscuridad en su contenido, pues a todas luces informa que no se cubrirán los daños reclamados contra un asegurado que surjan de la comisión de cualquier actuación criminal o fraudulenta que se haya establecido mediante admisión o la adjudicación de un tribunal. En ese sentido, la aseguradora no está obligada a responder por los riesgos expresamente excluidos. De lo contrario, estaríamos reescribiendo los términos de un acuerdo que constituye la ley entre las partes.**

Así pues, según los términos específicos de la póliza y a base de las alegaciones consignadas en la *Demanda*, concluimos que AIG logró demostrar satisfactoriamente que la cláusula de exclusión 4(b) sí aplica a las reclamaciones en el presente caso. Valga señalar que esta determinación no incide sobre las imputaciones de negligencia que los recurridos exponen en su reclamación de daños y perjuicios contra otros demandados, y que en su día podría atender el tribunal de instancia. Destacamos que la presente controversia se circunscribe a un asunto de Derecho de Seguros, entiéndase, la interpretación de una cláusula de exclusión en una póliza de seguro. Por lo tanto, ante la ausencia de controversia sustancial sobre los hechos bien

Evidencia, 32 LPRA Ap. VI, R. 201. Véase *Solicitud de sentencia por las alegaciones*, Apéndice del *certiorari*, pág. 56 esc. 1.

alegados, determinamos que erró el Tribunal de Apelaciones al no expedir el recurso para aplicar el derecho y revocar la determinación del Tribunal de Primera Instancia mediante la cual se denegó la *Solicitud de sentencia por las alegaciones*.

## IV

Por los fundamentos expuestos, se revocan la *Resolución* emitida el 27 de enero de 2022 por el Tribunal de Apelaciones y la *Resolución y orden* dictada el 10 de noviembre de 2021 por el Tribunal de Primera Instancia. En consecuencia, se desestiman las causas de acción presentadas en contra de AIG y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Se dictará *Sentencia* en conformidad.


                            ROBERTO FELIBERTI CINTRÓN
                                 Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| W.M.M., P.F.M., por sí y en representación de su hija menor de edad P.V.F.M.<br><br>Recurridos<br><br>v.<br><br>Puerto Rico Christian School, Inc.; Gabriel Amadis Ayala Monges; John Doe y Demandados de nombres desconocidos<br><br>Recurridos<br><br>AIG Insurance Company-Puerto Rico<br><br>Peticionario | CC-2022-126 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de abril de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos la Resolución emitida el 27 de enero de 2022 por el Tribunal de Apelaciones y la Resolución y orden dictada el 10 de noviembre de 2021 por el Tribunal de Primera Instancia. En consecuencia, se desestiman las causas de acción presentadas en contra de AIG Insurance Company-Puerto Rico y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente y emite un Voto Particular Disidente. El Juez Asociado señor Rivera García disiente con Opinión escrita. El Juez Asociado señor Estrella Martínez disiente con Opinión escrita. El Juez Asociado señor Colón Pérez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| W.M.M., P. F. M., por sí y en representación de su hija menor de edad P.V.F.M.<br><br>Recurridos<br><br>v.<br><br>Puerto Rico Christian School, Inc.; Gabriel Amadis Ayala Monges; John Doe y Demandados de nombres desconocidos<br><br>Recurridos<br><br>AIG Insurance Company - Puerto Rico<br><br>Peticionaria | CC-2022-0126 | *Certiorari* |

La Jueza Presidenta Oronoz Rodríguez emitió un Voto Particular Disidente

En San Juan, Puerto Rico, a 17 de abril de 2023.

No estoy de acuerdo con la decisión de la mayoría. Este caso versa sobre una reclamación de daños y perjuicios que incoaron los padres de la menor P.V.F.M., por sí y en representación de esta (parte demandante), a raíz de la agresión sexual que ella sufrió por parte de su maestro, el Sr. Gabriel Ayala Monges. Esto ocurrió mientras él realizaba sus labores educativas para la Puerto Rico Christian School, Inc. (la escuela). En lo pertinente, la parte demandante le imputó a la escuela haber sido negligente al contratar, adiestrar y supervisar al señor Ayala Monges. De esta forma, adujo que la omisión de la escuela contribuyó a la ocurrencia

de la agresión sexual. Por su parte, AIG Insurance Company-Puerto Rico, la compañía aseguradora de la escuela (la aseguradora), arguyó que la póliza no cubría la reclamación contra esta debido a la aplicabilidad de cierta cláusula de exclusión. Este Tribunal, en mi opinión desacertadamente, adoptó su teoría.

De entrada, me parece desacertado disponer de la controversia en una etapa tan temprana del litigio, sin permitirle a la parte demandante descubrir prueba que pudiera ayudar a suplementar las alegaciones de la demanda. De haberse resuelto lo anterior, se hubiese dispuesto, sin más, de la controversia ante nos y hubiera sido innecesario considerar el otro extremo de la controversia: la interpretación de la cláusula de exclusión.

Aun asumiendo que en esta etapa procedía resolver lo concerniente a la interpretación de la cláusula de exclusión en disputa —con lo cual reitero no estoy de acuerdo— no comulgo con la postura de que el lenguaje allí establecido excluye decididamente la causa de acción de daños y perjuicios contra la escuela, fundamentada en su alegada negligencia al contratar, adiestrar y supervisar al señor Ayala Monges.

**I**

En cuanto al argumento procesal, téngase presente que nos encontramos revisando la denegatoria de una *Solicitud de sentencia por las alegaciones* al amparo de la Regla 10.3 de Procedimiento Civil, 32 LPRA Ap. V, que la aseguradora instó.

Tanto el foro primario como el foro apelativo intermedio declinaron concederla. Sobre esta figura jurídica, es menester recordar que la sentencia por las alegaciones se puede emitir cuando de estas **"surge que no existe controversia sustancial de hechos, haciendo innecesario la celebración de un juicio en su fondo para recibir o dilucidar la prueba"**. <u>Montañez v. Hosp. Metropolitano</u>, 157 DPR 96, 102 (2002) (Énfasis suplido). *Véase también:* <u>P.A.C. v. ELA I</u>, 150 DPR 359, 377 (2000).

Estimo que era meritorio, por medio del descubrimiento de prueba e, incluso, la celebración de un juicio en su fondo, que se dilucidaran las alegaciones de negligencia contra la escuela. De esta forma, se hubiese podido auscultar si esta se apartó de su deber de cuidado al contratar, adiestrar y supervisar al señor Ayala Monges y, en consecuencia, si esa negligencia permitió el abuso sexual que se perpetró contra la menor. De haber sido así, entonces la pregunta era si la aseguradora respondía por esos actos negligentes de la escuela, sus directores y oficiales. De dictaminarse que la escuela no incurrió en negligencia, nos evitábamos la pregunta jurídica de si la aseguradora respondía. Esto hubiese tornado en superfluo un ejercicio hermenéutico sobre la cláusula de exclusión. Por ello estimo que era prematuro, en esta etapa, desestimar la demanda contra la aseguradora pues se pierde la oportunidad de descubrir hechos sustanciales relevantes a la responsabilidad de la escuela. En vista, pues, de que este

no fue el rumbo que tomaron mi compañera y compañeros de estrado, debo entonces expresar mi criterio sobre el otro aspecto de este caso.

## II

Adentrándome en lo sustantivo, conviene dejar claro dónde estriba la controversia sobre la interpretación de la cláusula de exclusión que está consignada en la póliza que se le expidió a la escuela. La aseguradora argumentó que el lenguaje de la exclusión precluía la causa de acción por la negligencia propia de la escuela al contratar, adiestrar y supervisar. Ante una controversia novel como esta, me pareció prudente el proceder de la mayoría de recurrir a jurisprudencia persuasiva estadounidense —estatal y federal— para auxiliarnos en nuestra labor adjudicativa. Sin embargo, la Opinión del Tribunal ignora pronunciamientos judiciales que aportan otro análisis. De hecho, existe otra casuística que, a mi juicio, resulta más persuasiva, y resuelve lo contrario a la Opinión que hoy se certifica.

Por ejemplo, por mencionar algunos de esos pronunciamientos, en <u>Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 709 A.2d 910 (Pa. Super. Ct. 1998), se evaluó en esencia si una reclamación contra un centro escolar por negligencia en la supervisión de cierto funcionario que agredió sexualmente a una estudiante estaba cobijada por la póliza que se expidió, dado que esta contenía una cláusula de exclusión de actos criminales muy similar a la del caso de autos. Ese tribunal

contestó afirmativamente esa interrogante. Razonó, primero, que las alegaciones en la acción de negligencia contra el centro escolar, en principio, eran un *wrongfrul act* cubierto por la póliza. Segundo, que la cláusula de exclusión, si bien excluía reclamaciones por conducta criminal y/o intencional, **no vedaba la presentación de acciones ancladas en negligencia**, como aquella contra el centro escolar. Es decir, que no había una exceptuación categórica de reclamaciones fundamentadas en negligencia. Tercero, **el foro judicial enunció que, según se desprendía de las alegaciones de las partes, el daño causado (la agresión sexual) se originó por las acciones negligentes y omisiones del centro escolar; la negligencia y omisiones —que constituye en sí la reclamación— no surgieron de la agresión sexual. O sea, que la actuación del funcionario agresor *surgió de* las fallas del centro escolar, no al revés**. Íd., pág. 916 ("The injuries arise, according to the pleadings to which we are restricted, from the School District's negligent acts and omissions; the omissions and negligence (the "claim") did not arise from the molestation. That is, Walls' acts "arose out of" the failings of the School District, not the other way around.").

Es palmario que el razonamiento en el caso citado aplica cabalmente a la situación jurídica del recurso ante nos. Aquí, las alegaciones de los demandantes contra la escuela, en definitiva, son un *wrongful act* según definido en la póliza; la cláusula de exclusión no impide inequívocamente la cobertura de reclamaciones fundadas en negligencia, y los

demandantes adujeron que la negligencia de la escuela redundó en que persistiera la agresión sexual contra la estudiante P.V.F.M. Al cumplirse todos estos criterios, consecuentemente, procedía interpretar que la póliza cubría la causa de acción de negligencia contra la escuela. Véanse, además, a modo ilustrativo, los dictámenes en: Watkins Glen Cent. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., 286 A.D.2d 48 (2001); Durham City Bd. of Educ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 426 S.E.2d 451 (1993). En estos casos se resolvió similarmente a Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh, supra.

III

En fin, una mayoría de este Tribunal pudo haber empleado un análisis alterno —que estimo que es más persuasivo y convincente al que se consigna en la Opinión— al aproximarse a los hechos de este caso y, puntualmente, a la cláusula de exclusión, con el fin de alcanzar una conclusión más sensata. Esta aproximación me lleva a colegir que la causa de acción por negligencia contra Puerto Rico Christian School, Inc. no estaba necesariamente excluida de la cobertura que brinda la póliza de AIG, por lo que la demanda no se debió desestimar en cuanto a esta.

IV

A raíz de lo anterior, hubiese confirmado a los foros inferiores y permitido que el litigio continuara su cauce ordinario ante el Tribunal de Primera Instancia. Estimo que

nos hubiésemos beneficiado de ver el caso en una etapa más madura, cuando los hechos y las controversias jurídicas se hubiesen depurado mejor y cuando hubiésemos contado con un expediente más completo para disponer de una controversia que enfrentamos por primera vez en nuestra jurisdicción. En vista de que ello no ocurrió, disiento.


                                    Maite D. Oronoz Rodríguez
                                         Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| W.M.M, P.F.M, por sí y en representación de su hija menor de edad P.V.F.M. <br><br> Recurridos <br><br> v. <br><br> Puerto Rico Christian School, Inc.; Gabriel Amadis Ayala Monges; John Doe y Demandados de nombres desconocidos <br><br> Recurridos <br><br> AIG Insurance Company- Puerto Rico <br><br> Peticionaria | CC-2022-0126 | *Certiorari* |

**Opinión disidente emitida por el Juez Asociado señor Rivera García**

En San Juan, Puerto Rico, a 17 de abril de 2023.

## I

El buen funcionamiento de nuestro sistema judicial —especialmente en su dimensión apelativa— requiere la observación rigurosa de ciertos principios dirigidos a promover la confianza en las determinaciones de nuestros tribunales de instancia. Uno de estos preceptos cardinales es aquel que dispone que las **determinaciones de los foros primarios**, particularmente aquellas **relacionadas con el manejo de los casos** ante su consideración, no deben ser

revocadas salvo que estas carezcan de **razonabilidad** y una **base jurídica** que las justifique.

En el recurso ante nos, en una etapa extremadamente temprana de los procedimientos, el Tribunal de Primera Instancia estimó que las alegaciones de las partes, **evaluadas bajo el palio del derecho imperante en nuestra jurisdicción**, no permitían aún una determinación que eximiera a la aseguradora codemandada de responsabilidad por los alegados actos negligentes del colegio codemandado. Así, el foro de instancia determinó que las alegaciones de los padres de la menor agraviada exponían un patrón de negligencia, imputable al colegio y **diferenciable del acto criminal** lastimosamente cometido contra P.V.F.M. por un exempleado de la institución. De este modo, razonó que **la cláusula de exclusión invocada por la aseguradora no conducía al resultado que esta deseaba.** Posteriormente, confrontado con este desenlace, el foro intermedio se negó a intervenir en esta etapa de los procedimientos.

Luego de un examen ponderado del expediente ante nos, me veo precisado a coincidir con el criterio enunciado por los foros recurridos. Consecuentemente, disiento respetuosamente del resultado anunciado en el día de hoy por una Mayoría de este Foro. Veamos.

Por entender que la *Opinión* del Tribunal expone adecuadamente los hechos que motivan este recurso, procedo directamente al marco jurídico que motiva mi disenso.

## II

### A. Discreción en el manejo de los casos

Hace varios años en Mejías v. Carrasquillo, 185 DPR 288 (2012), este Tribunal emitió unas expresiones que resultan transcendentales en el caso que hoy nos ocupa. Allí, dijimos que

> [l]a deferencia al juicio y a la discreción del foro sentenciador está fundamentada en el principio de que **los foros apelativos no pueden pretender conducir ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia.** Como es harto sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. (Énfasis suplido).[1]

De este modo, nuestro ordenamiento ha reconocido una norma bien fundada que reviste a los foros de instancia con una amplia discreción para ordenar los procedimientos ante su consideración. Tal discreción se funda en el conocimiento que tiene el Tribunal de Primera Instancia de las particularidades del caso, el contacto con los litigantes y la prueba que se haya presentado.[2]

---

[1] *Mejías v. Carrasquillo*, 185 DPR 288, 306-07 (2012)

[2] *Citibank v. ACBI*, 200 DPR 724, 736 (2018).

Así las cosas, **los tribunales apelativos debemos abstenernos de intervenir con las determinaciones que el foro primario emita en el sano uso de su discreción**, salvo que se pruebe que este actuó con prejuicio, parcialidad, error manifiesto o en craso abuso de esa discreción.[3] No es de sorprender, pues, que hemos expresado que "**son pocos los casos en los que hemos concluido que, en efecto, el foro de instancia incurrió en pasión, prejuicio, parcialidad o error manifiesto**".[4] (Énfasis suplido).

Merece apuntalar, además, que la discreción no es otra cosa que la facultad "para decidir en una forma u otra, esto es, escoger entre uno o varios cursos de acción".[5] No obstante, hemos reiterado que **el sano ejercicio de la discreción judicial viene atado inexorablemente al concepto de la razonabilidad.**[6] Además, hemos identificado el abuso de discreción cuando el juzgador (1) ignora sin fundamento algún hecho material, (2) le concede demasiado peso a un hecho inmaterial y funda sus determinaciones en dicho hecho o (3) cuando al examinar todos los hechos de un caso hace un análisis liviano e irrazonable.[7] Puesto de otra manera, la conducta antes descrita describe aquellas instancias donde la discreción

---

[3] *Íb.*

[4] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

[5] *Citibank v. ACBI*, supra, pág. 735. (citando a *García v. Asociación*, 165 DPR 311, 322 (2005).

[6] *Íb.*, véase también *Pueblo v. Santiago Cruz*, 205 DPR 7, 53-54 (2020).

[7] *Pueblo v. Custodio Colón*, 192 DPR 567, 588-589 (2015).

del juzgador de primera instancia no condujo a una determinación razonable.

Ahora bien, precisa esclarecer lo que implica evaluar la razonabilidad de una determinación adjudicativa. Para ello, encontramos una amplia fuente de discusión análoga en nuestro derecho administrativo. Adviértase, que los contornos de la revisión judicial dentro del derecho administrativo surgen de las particularidades que presentan las adjudicaciones que emiten las agencias administrativas. No obstante, esto no es óbice para acudir a aquellas normas de revisión que fortalezcan las actuaciones de los tribunales apelativos.

En lo pertinente, es harto conocido que la revisión judicial de las adjudicaciones administrativas se circunscribe a dos (2) esferas: los hechos y el derecho. Respecto a los hechos, la regla es que los tribunales no debemos intervenir con las determinaciones fácticas de las agencias, siempre y cuando estas se basen en evidencia sustancial que obre en el expediente.[8] No es de sorprender, que dicha norma no dista sustancialmente de aquella que los foros apelativos observamos respecto a las determinaciones de hechos formuladas por los tribunales primarios.[9]

---

[8] Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9675.

[9] Véanse Regla 42.2 de Procedimiento Civil, 32A LPRA Ap. V., R. 42.2; *Dávila Nieves v. Meléndez Marín*, supra, págs. 771-72.

Ahora bien, las conclusiones de derecho de las agencias administrativas son revisables en toda su extensión por los tribunales.[10] Por esto, hemos resuelto que estas deben ser sostenidas **en tanto sean razonables.**[11] Importantemente, hemos enfatizado que **la evaluación de la razonabilidad de una determinación administrativa no autoriza a los tribunales apelativos a sustituir la determinación de una agencia cuando esta represente uno de varios cursos de acción razonables.** Es decir, que, **si la interpretación** que hace la agencia **es razonable, aunque no sea la única razonable, los tribunales debemos darle deferencia.**[12] Naturalmente, **los motivos que apoyan esta norma no desaparecen cuando reemplazamos el foro revisado por un tribunal en vez de una agencia.** Ante lo indeseable de que los tribunales apelativos ejerzamos innecesariamente nuestras facultades revisoras, urge replicar en casos como este, dicha mentalidad examinadora.

### B. Sentencia dictada por las alegaciones de conformidad con la Regla 10.3 de Procedimiento Civil

Dispone la Regla 10.3 de Procedimiento Civil, que "[d]espués que se hayan presentado todas las alegaciones, cualquier parte podrá solicitar al tribunal que dicte sentencia parcial o total por las alegaciones...". De esta

---

[10] 3 LPRA sec. 9675.
[11] *Vargas Serrano v. Inst. Correccional*, 198 DPR 230, 237-38 (2017)
[12] Véase, *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016); *González Segarra v. CFSE*, 188 DPR 252, 277 (2013).

forma, nuestro ordenamiento procesal civil faculta a los tribunales para resolver los casos ante su consideración mediante una examinación de las alegaciones instadas por las partes. Al auscultar nuestra jurisprudencia, surge que la discusión más completa que hemos dedicado a este mecanismo procesal surge en <u>Montañez v. Hospital Metropolitano</u>, 157 DPR 96 (2002).

Allí, dijimos que "procede dictar sentencia por las alegaciones cuando de éstas surge que no existe controversia sustancial de hechos, haciendo innecesario la celebración de un juicio en su fondo para recibir o dilucidar la prueba".[13] Además, enfatizamos que **esta moción no es el mecanismo más apropiado para determinar la suficiencia de las defensas y reconvenciones.**[14] Por otra parte, señalamos, que la consideración de una moción bajo la Regla 10.3 de Procedimiento Civil debe seguir el mismo proceso que una moción de desestimación bajo la Regla 10.2 de ese mismo cuerpo.[15] Así, el Tribunal deberá examinar las alegaciones de la demanda de la manera más favorable al demandante. Completado esto, el tribunal solo deberá desestimar **si el promovente no tiene derecho a remedio alguno** bajo cualesquiera hechos que pueda probar.[16]

---

[13] *Montañez v. Hospital Metropolitano*, 157 DPR 96, 102 (2002).
[14] *Íb.*, pág. 102-03.
[15] *Íb.*, pág. 103-04.
[16] *Íb.*, pág. 105.

**C. Cláusulas de exclusión y los daños causados en conexión con la comisión de un delito**

Sabido es que mediante el contrato de seguro "una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".[17] El beneficio de este tipo de pacto es "que permite igualmente a las personas, como a los negocios, proteger sus recursos al transferir el impacto monetario de ciertos riesgos a cambio del pago de una prima".[18] De este modo, el flujo ordinario de una relación contractual de seguros implica que, al suscitarse un daño contemplado en la cubierta o póliza, el asegurador vendrá obligado a responderle al asegurado, conforme a los términos del contrato suscrito.

Ahora bien, y en lo pertinente a este caso, nuestro ordenamiento reconoce la posibilidad de que las partes en un contrato de seguro acuerden excluir ciertos eventos o ocurrencias del ámbito del pacto. Esto es lo que conocemos como una cláusula de exclusión. Así, mediante estas cláusulas se limita la "cubierta provista por un seguro al exceptuar determinados eventos, riesgos o peligros".[19] Dichas cláusulas son generalmente desfavorecidas y deben ser interpretadas restrictivamente contra el asegurador.[20]

---

[17] Art. 1.020, Cód. Seg. P.R., 26 LPRA sec. 102.
[18] *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 897 (2012).
[19] *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 279 (2015).
[20] *Íb.*

Claro está, si dichas cláusulas han sido confeccionadas mediante términos claros, no podría responsabilizarse a la aseguradora por los riesgos allí contemplados.[21]

Al confrontarnos ante una controversia sobre la interpretación de una cláusula de exclusión, debemos recurrir en primera instancia a las normas de hermenéutica que pregona nuestro ordenamiento de seguros. A tal efecto, nuestro Código de Seguros dispone que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta".[22] Hemos indicado que el lenguaje de una póliza debe interpretarse en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical.[23] Esto es, que debemos examinar lenguaje desde la óptica de una persona de inteligencia promedio.[24] Así, son claros los términos de un contrato de seguro cuando el lenguaje es específico, sin dar lugar a dudas, ambigüedades ni sea susceptible de distintas interpretaciones.[25]

---

[21] *Íb.*
[22] 26 LPRA sec. 1125.
[23] *Rivera Matos v. ELA*, 204 DPR 1010, 1020 (2020).
[24] *Íb.*
[25] *Íb.*, pág. 1021.

Ahora bien, la *Opinión Mayoritaria* del Tribunal alude extensamente a varias fuentes provenientes de la jurisprudencia estadounidense, en materia de seguros, en aras de contextualizar la interpretación de las cláusulas de exclusión y, en particular, la que se encuentra controvertida en este caso.[26] No obstante, como expondré a continuación, no coincido con el criterio de que la tendencia a nivel de todas las jurisdicciones estadounidenses conduce únicamente al resultado que hoy una Mayoría anuncia. Veamos.

Un examen de este tema precisa recurrir a las fuentes literarias en la materia del derecho de seguros, toda vez que existe una infinidad de determinaciones judiciales en los distintos tribunales federales y estatales. De este modo, al recurrir a estos tratadistas, encontramos una síntesis poderosa de los principios que rigen esta materia.

De entrada, encontramos en el *Corpus Juris Secundum,* fuente secundaria del derecho común*,* que las aseguradoras, lícitamente, pueden limitar contractualmente los riesgos que asumen.[27] Es decir, la política pública no exige que una póliza de seguro cubra todo riesgo o peligro.[28] Ahora bien, ante la norma de que las ambigüedades en las pólizas

---

[26] *Opinión del Tribunal*, pág. 21.
[27] 46 *CJS Insurance* sec. 1245.
[28] *Íb*.

deben ser interpretadas en contra de la aseguradora, si esta desea excluir cierta cubierta en virtud de lo acordado, debe establecer ciertos elementos, a saber:

> (1) write the exclusion in obvious and unambiguous language in the policy,
>
> (2) establish that the interpretation excluding covering under the exclusion **is the only interpretation of the exclusion that could fairly be made**, and
>
> (3) establish that the exclusion clearly applies to the particular case. (Énfasis suplido).[29]

Lo anterior confirma que es la aseguradora quien tiene el peso de la prueba para establecer que cierta exclusión aplica a unos hechos.[30] Cabe resaltar, que, **generalmente, cuando dos (2) riesgos distintos concurren en causar próximamente una pérdida, habrá cubierta si cualquiera de ellos se encuentra cubierto, aunque se excluya el otro**.[31] No obstante, surge del *Corpus Juris Secundum* que algunas fuentes sostienen que la pérdida solo sería cubierta en la medida que pudiese ser atribuida al riesgo cubierto.[32]

Ahora bien, ya acercándonos a las circunstancias de este recurso, es menester examinar la doctrina respecto a las cláusulas de exclusión basadas en la comisión de un

---

[29] *Íb*.

[30] *Íb*., véase también *Rivera Matos v. ELA*, supra, pág. 1022.

[31] 46 *CJS Insurance* sec. 1245. ("Generally, when two different risks concur in proximately causing a loss, coverage will exist if either risk is covered, **notwithstanding the exclusion of the other**." (Enfasis suplido)).

[32] *Íb*.

delito. Según destaca el respetado tratado *Couch on Insurance*, para que aplique una exclusión basada en la comisión de un delito **el elemento esencial de la causa de acción debe ser un acto criminal y el acto criminal debe ser la causa próxima del daño.**[33] No aplicaría esta exclusión **cuando el daño fue ocasionado por la negligencia del asegurado,** aun cuando la violación de alguna norma de seguridad pública, por parte del asegurado, haya sido un factor contribuyente.[34] Sin embargo, la exclusión sí aplicaría cuando los hechos operativos involucren un **acto criminal cometido por el asegurado,** aun cuando el agraviado haya conceptualizado su reclamación alegando negligencia.[35] Además, cuando el daño haya sido causado por un **acto ilícito y voluntario de un tercero,** la exclusión no es aplicable.[36]

En esta línea, el tratado expone aquellas instancias donde la negligencia alegada se basa en la contratación, supervisión y otras actividades similares. Así, indica que **"[w]here an independent act of negligence is alleged, the fact that an act excluded from coverage was also committed does not necessarily preclude coverage for the negligent**

---

[33] 7A *Couch on Insurance* sec. 103:40.

[34] *Íb.*

[35] *Íb.* ("However, the exception will be applied where the operative facts involve **a criminal act by an insured,** despite the fact that the injured party frames the complaint in terms of negligence." (Énfasis suplido)).

[36] *Íb.*

**act"**. (Énfasis suplido).[37] No obstante, la fuente concede que **es posible** que ciertos actos intencionales, como la agresión sexual, queden excluidos por su naturaleza altamente intencional.[38] Por ende, se nos indica que **hay una diferencia de opinión sobre si las causas basadas en la negligencia al contratar y supervisar deben ser cubiertas por una póliza cuando la persona contratada o supervisado a cometido un acto intencional.**[39]

## III

En el día de hoy, consigno mi disenso por una simple razón. Una lectura del criterio mayoritario sugeriría que el ordenamiento de seguros obliga la conclusión a la que arriba una Mayoría en este caso. A saber, que el lenguaje de la cláusula de exclusión en controversia,

---

[37] 7A *Couch on Insurance* sec. 103:31.

[38] Íb. (However, there are certain acts that by their very nature (i.e., sexual abuse or sexual harassment) **may be considered as a practical matter** to be clearly intentional and willful and no matter how alleged will not be covered". (Énfasis suplido)).

[39] Íb. Para un examen de la divergencia de criterios en cuanto a este tema, véanse *Ritchie v. Turner*, 547 S. W. 3d 145 (2018) (Ky. Ct. App. 2018) (Resolviendo que las exclusiones en la póliza de una junta de educación, por daños que surgieron de actos criminales, **solo excluían al agresor de la cubierta, pero no excluía de cubierta a otros empleados si estos habían incurrido en negligencia al contratar, supervisar, investigar u otras actividades que hubieran causado la ofensa sexual.**); *American Family Mut. Ins. Co. v. Enright*, 781 N. E. 2d 394 (2d. Dist 2002) (Resolviendo que la agresión sexual de un empleado a un paciente **se encontraba cubierta** bajo una causa de acción de **negligencia al contratar.**); *Century Surety Company v. Seidel*, 898 F. 3d 328 (5to Cir. 2018) (Resolviendo que **aun cuando la víctima de una agresión sexual no le hubiera imputado a un restaurante la comisión de un acto criminal**, al permitir que un empleado le sirviera alcohol previo a violarla, **el daño estaba excluido por la póliza.**); *Farmer ex rel. Hansen v. Allstate Ins. Co.*, 311 F. Supp. 2d 884 (9no Cir. 2006) (Resolviendo que una cláusula de exclusión por actos intencionales o criminales **impedía la cobertura de un daño provocado por la supervisión negligente** de un empleado que agredió a un menor.)

**inequívocamente,** exime a la aseguradora de responder por los actos presuntamente negligentes del colegio. A mi juicio, el Tribunal parece razonar que estamos ante un asunto de estricto derecho para el cual no hay que aguardar a una etapa posterior para corregirlo. **Sostengo respetuosamente que tal no es el caso.**

Como expondré a continuación, soy del criterio de que, en este caso, **en una etapa donde ni siquiera se había celebrado el descubrimiento de prueba**, no nos encontrábamos en posición para emitir un pronunciamiento sobre el derecho aplicable a esta controversia. Esto, más aún, cuando **surge del estudio de las fuentes interpretativas una divergencia sobre cómo tratar una situación como esta**. ¿Qué implica esto? Que, en términos prácticos, **no era aconsejable intervenir en esta etapa**.

No menos importante, la determinación del foro primario —que hoy consideramos— queda enmarcada decididamente dentro de su esfera discrecional respecto al manejo del caso. Evidentemente, estamos ante un pleito de naturaleza sensible, el cual versa sobre unos hechos que estremecen la conciencia. No obstante, sostengo que la postura que hoy asumo es igualmente aplicable a cualquier caso que se encuentre en similar etapa.

En estos hechos, el foro primario únicamente tuvo ante su consideración las alegaciones formuladas por las

partes, además del lenguaje de la póliza en controversia. De este modo, tuvo el beneficio de examinar las teorías legales que fundamentan las posturas los recurridos y la aseguradora. Examinemos cuidadosamente su proceder para detectar si hay indicio alguno de una determinación irrazonable.

En su *Demanda*, los recurridos alegaron que Puerto Rico Christian School, Inc, (PRCS) fue negligente al reclutar al Sr. Gabriel Ayala Monges (señor Ayala Monges) como maestro de menores sin tener los credenciales para dicho oficio.[40] Además, afirmaron que PRCS fue negligente en el proceso de adiestrar al señor Ayala Monges para el cargo para al cual fue contratado.[41] También, le imputaron a PRCS una conducta negligente en la supervisión de sus empleados y en la custodia de la menor P.V.F.M.[42]

Según entendió el foro primario, de las alegaciones contra PRCS surgían dos (2) causas de acción: una por su propia negligencia en su carácter como institución y otra por responsabilidad vicaria por los actos de su entonces empleado, el señor Ayala Monges. Así, el tribunal primario expuso que dicha responsabilidad surgía de dos (2) fuentes, la responsabilidad propia bajo el Artículo 1802

---

[40] *Demanda*, Apéndice del *Certiorari*, pág. 28.
[41] *Íb.*
[42] *Íb.*

del Código Civil de 1930,[43] y la responsabilidad vicaria bajo el Artículo 1803 del mismo cuerpo.[44]

Crucialmente, el foro primario examinó el lenguaje de la Cláusula 4 de la póliza entre PRCS y AIG Insurance Company-Puerto Rico (AIG). En lo pertinente, la Cláusula 4(b), **según enmendada mediante endoso del 15 de febrero de 2018**, exime a la aseguradora de tener que responder por aquellos daños "arising out of, based upon o attributable to the comiiting in fact of any criminal o deliberate fraudulent act".[45] Además, la cláusula establece que "[f]or the purpose of determining the applicability of exclusions (a) and (b), **the Wrongful Act of any Individual Insured shall not be imputed to any other Individual Insured**".[46]

Con el beneficio de este examen, el foro primario determinó que las alegaciones contra PRCS, en tanto le imputaban **responsabilidad propia por negligencia**, al amparo del Artículo 1802 del Código Civil de 1930, no quedaban fuera del alcance de la póliza entre esta y AIG. No así, con las alegaciones que imputaban una **responsabilidad vicaria** por los actos del señor Ayala Monges. A juicio de la juzgadora de instancia, **esto segundo implicaría imputarle a PRCS los actos criminales cometidos**

---

[43] Art. 1802, Cód. Civ. P.R., 31 LPRA sec. 5141. (derogado).
[44] Art. 1803, Cód. Civ. P.R., 31 LPRA sec. 5142. (derogado).
[45] *Solicitud de Sentencia por las Alegaciones*, Apéndice del *Certiorari*, pág. 91.
[46] Íb.

**por el señor Ayala Monges**, actuación decididamente excluida de cobertura bajo por el lenguaje de la Cláusula 4.[47]

Así las cosas, lo cierto es que aquí no hay indicio alguno de un abuso discreción, mucho menos de algún tipo de parcialidad o prejuicio. Por el contrario, encuentro que el foro primario sopesó concienzudamente el lenguaje de la póliza e intentó armonizarlo con nuestro ordenamiento extracontractual y de seguros. Con ello en mente, la conclusión del foro primario fue sencilla, esto es, que **la interpretación del lenguaje contractual no vedaba una causa de acción contra PRCS por sus propios actos negligentes y, por tanto, contra AIG como aseguradora. Lo anterior, máxime, cuando lo contrario pudiese implicar una imputación a PRCS de los actos criminales del señor Ayala Monges.**

Una mirada a las fuentes examinadas sugiere que aquí esta situación es susceptible de ser resuelta en varias formas. Como vimos, existen distintas corrientes de criterio sobre cómo manejar situaciones análogas a esta, donde la negligencia imputada se pretende distinguir del acto criminal. Nótese, que aquí **el asegurado objeto de la reclamación es PRCS**. Es decir, en lo que nos incumbe, **quien cometió el acto criminal no es el objeto de las alegaciones**

---

[47] *Resolución y Orden* del 10 de noviembre de 2021, Apéndice del *Certiorari*, pág. 244.

**de negligencia.** Evidentemente, PRCS, como entidad jurídica, sería incapaz de cometer los actos por los cuales el señor Ayala Monges fue convicto.

Al examinar la determinación del foro primario, vemos que esta buscaba identificar cuidadosamente a qué persona se le imputan los distintos actos negligentes o criminales. Basado en ello, concluyó que podía persistir la causa de acción contra AIG, en su carácter como aseguradora de PRCS. Esto dista mucho de una determinación irrazonable y sin base jurídica. Así las cosas, sostengo que el **derecho persuasivo no nos provee con una solución definitiva a la interrogante que requería contestar la** *Solicitud de Sentencia por las Alegaciones*. Merece recordar, además, que nuestra propia doctrina reconoce que el mecanismo procesal de la Regla 10.3 de Procedimiento Civil, *supra*, no es el idóneo para justipreciar la suficiencia de defensas tales como las que AIG levantó en este caso.

Ante ello, el Tribunal de Primera Instancia actuó dentro del marco de su discreción. Merecía nuestra deferencia para que, en esta etapa del pleito, pudiese atender el caso de la manera más justiciera posible. Si bien respeto el criterio de mis compañeros de estrado, no podría suscribir, en esta etapa del caso, un dictamen que pretendiera resolver esta controversia en sus méritos.

Creo firmemente que este es uno de esos litigios que se vería beneficiado por un tiempo de mayor estudio por parte de los tribunales, particularmente, con el insumo invaluable que proviene de un descubrimiento de prueba. Era preferible aguardar al resultado final de este caso antes de emitir un pronunciamiento interpretativo en esta materia. No siendo este el curso de acción por el cual opta este Tribunal, **respetuosamente disiento**.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| W.M.M., P.F.M., por sí y en representación de su hija menor de edad P.V.F.M.<br><br>Recurridos<br><br>v.<br><br>Puerto Rico Christian School, Inc.; Gabriel Amadis Ayala Monges; John Doe y Demandados de nombres desconocidos<br><br>Recurridos<br><br>AIG Insurance Company-Puerto Rico<br><br>Peticionaria | CC-2022-0126 | Certiorari |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 17 de abril de 2023.

Disiento del proceder de una Mayoría de este Tribunal cuya intervención revoca una determinación que, a todas luces, era correcta. Particularmente, porque el dictamen recurrido armonizaba la cláusula de exclusión impuesta por AIG Insurance Company-Puerto Rico (AIG Insurance o Aseguradora) con el resto de la póliza de seguro expedida a favor de la Puerto Rico Christian School, de conformidad con nuestro ordenamiento legal en el ámbito del Derecho de Seguros.

Por tanto, no puedo avalar el razonamiento esbozado en cuanto al alcance de la cláusula de exclusión que propuso

la Aseguradora y que con su dictamen hoy valida y pauta la Opinión mayoritaria. Ello, pues, tal criterio se aparta de nuestra firme norma hermenéutica de delimitar restrictivamente el alcance de las cláusulas de exclusión en las pólizas de seguro. Es decir, la Aseguradora no podía ampararse en el lenguaje de la cláusula que nos ocupa para librarse de su responsabilidad de ofrecer cubierta en caso de que prevalecieran contra su asegurado las reclamaciones instadas por la parte demandante.

A continuación, expongo los fundamentos en los que se enmarca mi disenso.

**I**

**A.**

Sabido es que la Regla 10.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.3, viabiliza que una vez se hayan presentado todas las alegaciones, cualquier parte solicite al tribunal que dicte sentencia parcial o total por las alegaciones. Íd. Hemos establecido que esta moción dispositiva fomenta la solución rápida de los casos ya que presupone que "no existe controversia sustancial de hechos, haciendo innecesario la celebración de un juicio en su fondo para recibir o dilucidar la prueba". Montañez v. Hosp. Metropolitano, 157 DPR 96, 102 (2002); P.A.C. v. E.L.A. I., 150 DPR 359 (2000). Por tanto, este mecanismo se dirige a los méritos de la controversia y no a los aspectos

procesales del caso. <u>Montañez v. Hosp. Metropolitano</u>, supra, pág. 105.

El estándar aplicable al adjudicar una solicitud de sentencia por las alegaciones es similar al que se utiliza ante una moción de desestimación basada en que la demanda deja de exponer una reclamación que justifique la concesión de un remedio. Íd., págs. 104-105. Así pues, el promovente para fines de la moción dispositiva deberá admitir como ciertos todos los hechos bien alegados en la demanda y exponer las razones por las cuales entiende que el Derecho le asiste.

Por otro lado, al adjudicar la procedencia de esta moción el juzgador deberá interpretar las alegaciones de la forma más favorable al demandante. <u>Cruz Pérez v. Roldán Rodríguez et al.</u>, 206 DPR 261, 267 (2021); <u>López García v. López García</u>, 200 DPR 50, 69 (2018). En ese sentido, una demanda solo será desestimada si de sus alegaciones, interpretadas en conjunto de la forma más liberal posible, se desprende que el demandante no tiene derecho a remedio alguno. En ese análisis, el juzgador deberá "conceder el beneficio [al promovido] de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda". <u>Montañez v. Hosp. Metropolitano</u>, supra, pág. 105.

Asimismo, debido a que esta solicitud dispositiva se presenta en una etapa temprana del pleito, el juzgador queda en posición de distinguir aquellas controversias que

ameritan o no la continuación de los procedimientos. De modo que, a pesar de que esta moción no es el mecanismo más apropiado para determinar la suficiencia de las defensas y reconvenciones,[1] nada en nuestro ordenamiento impide que, al denegarla, el tribunal emita una decisión interlocutoria que sirva para orientar la forma en que se conducirán los procedimientos ulteriores.

**B.**

En cuanto al tema sustantivo que nos ocupa, hemos definido el seguro como un "contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". Art. 1.020 del Código de Seguros de Puerto Rico, 26 LPRA sec. 102 (Código de Seguros). A su vez, se denomina póliza al documento donde se consignan los términos que rigen el contrato de seguro. Íd., sec. 1125. De lo anterior se colige que el propósito principal del contrato de seguro es indemnizar y proteger al asegurado mediante el traslado del riesgo a la aseguradora si ocurre un evento específicamente pactado en el contrato. R.J. Reynolds v. Vega Otero, 197 DPR 699, 706 (2017).

Por su parte, el Código de Seguros establece la norma de interpretación para las cláusulas de una póliza de seguro: "[t]odo contrato de seguro deberá interpretarse

---

[1]Sepúlveda v. Casanova, 72 DPR 62, 67 (1951).

globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de [e]sta". Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. Véase, además, Coop. Ahorro y Créd. Oriental v. S.L.G., 158 DPR 714 (2003). Así, en ausencia de ambigüedad, el contenido de la póliza de seguro es la ley entre las partes. R.J. Reynolds v. Vega Otero, supra, pág. 708. No obstante, valga aclarar que los términos de ese contrato son claros únicamente "**cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación**". (Negrillas suplidas). Íd., (citando a S.L.G. Francis Acevedo v. SIMED, 176 DPR 372, 387 (2009)).

Empero, de surgir dudas en torno a la interpretación de los términos de una póliza, estas deben resolverse a favor del asegurado en aras de que se cumpla "con su designio intrínseco, es decir, proveer protección al asegurado". Maderas Tratadas v. Sun Alliance et al., 185 DPR 880, 898 (2012). Ello tiene especial importancia debido a que el contrato de seguro es uno de adhesión. En consecuencia, sus disposiciones deben ser interpretadas liberalmente a favor del asegurado. San Luis Center Apts.

et al. v. Triple S Propiedad, 208 DPR 824, 834 (2022); Rivera Matos et al. v. Triple S et al., 204 DPR 1010, 1021 (2020); Maderas Tratadas v. Sun Alliance et al., supra; S.L.G. Francis Acevedo v. SIMED, supra. Es decir, estamos llamados a interpretarlos de esta forma con el objetivo de sostener la cubierta por vía de una interpretación razonable. López v. Atlantic Southern Ins. Co., 158 DPR 562, 568 (2003).

Similar razonamiento hemos aplicado a las cláusulas de exclusión insertadas en el contrato de seguro. Como norma general, este tipo de cláusulas son desfavorecidas toda vez que limitan la cubierta del asegurado por lo que deben interpretarse restrictivamente contra el asegurador. Rivera Matos et al. v. Triple S et al., supra, pág. 1021; Maderas Tratadas v. Sun Alliance et al., supra, pág. 899; S.L.G. Francis Acevedo v. SIMED, supra, pág. 388. Esto ya que, el efecto de una cláusula de exclusión es aminorar la responsabilidad del asegurador, siendo el contrato de seguro uno de adhesión, tales cláusulas de exclusión deben interpretarse restrictivamente en contra del asegurador. R. Cruz, Derecho de Seguros, San Juan, Publicaciones JTS, 1999, pág. 168. **En consecuencia, para que sostenga su validez, la cláusula de exclusión debe ser clara, específica, libre de ambigüedades y detallar la situación o el riesgo que se excluye de forma tal que el asegurado esté informado sobre los eventos particulares que**

**quedarán fuera de la cubierta**. Maderas Tratadas v. Sun Alliance et al., supra, pág. 899. De esta forma, "resguarda[mos] la esencia propia del seguro, que no es otra cosa que la de ofrecer la mayor protección al asegurado". Rivera Matos et al. v. Triple S et al., supra, pág. 1021.

Siendo este el marco normativo que rige los contornos de este disenso, procedo a examinar, en primer término, si la controversia respecto al alcance de la cláusula de exclusión era susceptible a dirimirse en esta etapa de los procedimientos. Acto seguido, expondré por qué AIG Insurance no tiene razón en su contención de que, por virtud de la cláusula de exclusión, está exenta de brindar cubierta a su asegurado en caso de que la Puerto Rico Christian School tenga que responder por los daños alegados en la demanda en su contra. Veamos.

## II

De entrada, consigno que el asunto relacionado con la aplicación de la cláusula de exclusión era susceptible a ser dirimido interlocutoriamente en esta etapa de los procedimientos. Para ello, bastaba con examinar los hechos que dieron base a las alegaciones formuladas por los padres de la menor —por sí y en representación de su hija (en conjunto, Recurridos)—, en cuanto a la Puerto Rico Christian School (Colegio) principalmente y, subsidiariamente, contra la Aseguradora.

Según surge del expediente, el Colegio contrató en el 2013 a Gabriel A. Ayala Monges (Ayala Monges) como maestro sustituto de literatura. Lastimosamente, desde entonces Ayala Monges se aprovechó y abusó de una estudiante durante varios años. Por tales hechos, Ayala Monges se declaró culpable en la esfera penal.

Tras concluir ese proceso, los Recurridos presentaron una demanda en contra de Ayala Monges, el Colegio y AIG Insurance. En lo que nos concierne, los Recurridos plantearon que el Colegio debe responder por los daños y perjuicios que fueron producto de su manejo negligente en el reclutamiento, adiestramiento y supervisión de Ayala Monges, así como en la custodia de la estudiante mientras asistía a sus aulas. Particularmente, adujeron que el Colegio:

> [1] fue negligente al [no] impedir que el maestro saliera con la menor y permiti[r], por culpa o negligencia, que este saliera del colegio para poder llevar a cabo actos de agresión sexual contra la [estudiante][;][2]
>
> [2] fue negligente al reclutar una persona sin las credenciales para trabajar como maestro de menores de edad en un colegio[;]
>
> [3] fue negligente al adiestrar a su maestro Gabriel Ayala para ejercer el cargo para el que fue contratado[;]
>
> [4] fu[e] negligent[e] al supervisar a los empleados bajo su

---

[2]Apéndice del certiorari, Demanda, págs. 26-27 (Alegación Núm. 9).

cargo mientras estos se encontraban en los predios del colegio desempeñando las funciones[;]

[5] fu[e] negligent[e] en su función de custodiar a su estudiante menor de edad al permitir que esta saliera del colegio sin la autorización de sus padres[;]

[6] fu[e] negligent[e] en [no] tomar medidas para prevenir el abuso sexual de maestros hacia estudiantes en su colegio, no mant[ener] un sistema efectivo de seguridad en los predios de su colegio para detectar posibles conductas de agresión sexual;

[7] falt[ó] a su deber de supervisar a sus estudiantes en las actividades del colegio;

[8] fu[e] negligent[e] además por medio de su maestro Gabriel Ayala, quien se aprovechó de su puesto de maestro para abusar sexualmente de una menor de edad[;]

[9] fu[e] negligente por medio de los maestros de la menor, quienes podían tener conocimiento de este hecho y no hicieron notificación alguna para evitar que continuara ocurriendo la agresión sexual por lo que por su culpa, negligencia y falta de previsibilidad deben responder por los daños y perjuicios reclamados en esta demanda[.][3]

Asimismo, los Recurridos alegaron que AIG Insurance debe responder solidaria y subsidiariamente por todos los daños reclamados bajo la póliza "Directors and Officers Not

---

[3]Apéndice del certiorari, Demanda, pág. 28 (Alegación Núm. 13). Se advierte que se optó por separar la alegación antes mencionada con el propósito exclusivo de ilustrar una mejor comprensión de lo expuesto.

for Profit" (Póliza D&O) que fue expedida por la Aseguradora a favor del Colegio.[4]

Por su parte, AIG Insurance compareció y negó que tuviera que ofrecer cubierta en virtud de una exclusión contenida en la póliza de seguro a favor del Colegio. Posteriormente, instó una Solicitud de sentencia por las alegaciones en la que argumentó que la Póliza D&O no cubría los hechos y las alegaciones que surgían de la Demanda. Ello, pues, según expuso, la cláusula de exclusión 4(b) contenida en la Póliza D&O es clara al disponer que no estarán protegidos aquellos daños que surjan, emanen o sean atribuibles como consecuencia de un acto criminal. De esta forma, adujo que no existían hechos materiales en controversia y solicitó que el tribunal emitiera una sentencia por las alegaciones a su favor al amparo de la Regla 10.3 de Procedimiento Civil, supra.

Como vemos, la controversia planteada ante el foro primario únicamente requería la aplicación del Derecho, por lo que era susceptible a dilucidarse interlocutoriamente en esta etapa de los procedimientos. Así pues, bastaba con examinar las alegaciones en la demanda y las mociones dispositivas en unión a la póliza de seguro suscrita por

---

[4]Apéndice del certiorari, Demanda, pág. 29 (Alegación Núm. 15). El texto íntegro de la alegación a la cual se hace referencia lee como sigue: "Que la codemandada, AIG Insurance Company-Puerto Rico, es la compañía aseguradora del codemandado Puerto Rico Christian School Inc. y como tal, debe responder solidariamente por los daños reclamados en esta demanda"). Íd.

las partes para resolver si la aseguradora debía formar parte o no de la acción presentada por los Recurridos.

Consecuentemente, de conformidad con la Regla 10.3 de Procedimiento Civil, supra, el Tribunal de Primera Instancia asumió como ciertos todos los hechos bien alegados en la Demanda y los examinó juntamente con todos los argumentos levantados por las partes, incluyendo los de AIG Insurance. Tras el análisis de rigor, concluyó que la Aseguradora tenía que seguir en el pleito solo en la eventualidad de que se determinase que el Colegio había incurrido en negligencia propia en la contratación y supervisión del personal a su cargo, así como de sus alumnos.

Evidentemente, el foro primario se ciñó al estándar de revisión atinente para adjudicar la solicitud de AIG Insurance. Además, considero que su proceder fue acertado toda vez que así contribuyó a delimitar los escenarios en los cuales la Aseguradora tenía que ofrecer cubierta. De este modo, no tan solo despejó las dudas sobre la permanencia en el pleito de la Aseguradora, sino que también orientó la forma y manera en que se llevarían a cabo los procedimientos ulteriores. En definitiva, reafirmo que, por tratarse de un asunto de estricto Derecho, en esta etapa de los procedimientos podía decretarse la permanencia en el pleito de AIG Insurance.

Superado este asunto de umbral, procedo a atender la médula de la controversia de epígrafe. A saber, si AIG Insurance debía o no responder subsidiariamente de probarse la negligencia imputada al Colegio en virtud de cierta cláusula de exclusión. Adelanto que mi divergencia de criterio con el razonamiento mayoritario estriba en que, en lugar de eximirle de responsabilidad, hubiese pautado que la Aseguradora no podía ampararse en el lenguaje de la cláusula para librarse de ofrecer cubierta al Colegio en caso de que prevalecieran contra este último las reclamaciones instadas por los Recurridos.

**III**

La póliza de seguro expedida por AIG Insurance establece una amplia gama de escenarios en los que ofrecerá cubierta a favor del Colegio y sus empleados. En lo pertinente, dispone que estará cubierto:

> u) "Wrongful Act" means:
>
> 1) with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Individual Insureds in his/her respective capacities as such, or any matter claimed against such Individual Insured solely by reason of his/her status as Individual Insureds of the Organization;
>
> 2) **with respect to the Organization under Coverage C, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the Organization;**

3) with respect to service on an Outside Entity, any matter claimed against such Individual Insureds arising out of such Insured serving as a director, trustee, trustee emeritus or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Organization;

4) with respect to both the Individual Insureds and the Organization and subject to paragraphs 1, 2 and 3 above, "Wrongful Act" shall specifically include:

a) Employment Practices Claims;
b) Non-Employment Discrimination;
c) violation of the Sherman Antitrust Act or similar federal, state or local statutes or rules;
d) libel, slander, defamation or publication or utterance in violation of an individual's right of privacy;
e) wrongful entry or eviction or other invasion of the right of occupancy;
f) false arrest or wrongful detention;
g) plagiarism; and
h) infringement of copyright or trademark or unauthorized use of title.[5]

De la Póliza D&O se desprende claramente que la presunta omisión del Colegio en la contratación y supervisión de sus empleados, así como de sus alumnos, cae bajo la definición amplia de un Wrongful Act. Ahora bien, mediante la cláusula de exclusión 4, AIG Insurance expresamente delimitó los escenarios en los cuales aplicaría cubierta de surgir un Wrongful Act, a saber:

---

[5] (Negrillas suplidas). Apéndice del certiorari, Solicitud de sentencia por las alegaciones, págs. 71-73, 75.

**4. Exclusions**

The Insurer shall not be liable to make any payment for Loss in connection with Claim made against an Insured:

  a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

  b) arising out of, based upon or attributable to the committing in fact of any criminal, or deliberate fraudulent act.

**For the purpose of determining the applicability of exclusions (a) and (b), the Wrongful Act of any Individual Insured shall not be imputed to any other Individual Insured.** These exclusions shall only apply in the event that any of the above is established by final adjudication of a judicial or arbitration tribunal or court of law, or admission by an Individual Insured that the relevant conduct did in fact occur.[6]

Tras analizar el alcance de estas disposiciones, el Tribunal de Primera Instancia determinó que la causa de acción atinente a la responsabilidad del Colegio por su propia negligencia en el reclutamiento, adiestramiento y supervisión de Ayala Monges, así como al fallar en custodiar y supervisar adecuadamente a los estudiantes, no activan la cláusula de exclusión 4(b) de la Póliza D&O puesto que tales hechos deben ser considerados como Wrongful Acts cubiertos bajo la póliza de seguro. En ese análisis, el

---

[6] (Negrillas suplidas). Íd., págs. 76, 91.

foro primario resaltó que lo que se le imputaba al Colegio era negligencia en el desempeño de sus funciones de reclutamiento y supervisión, por lo que no podía concluir que operaba la cláusula de exclusión. En consecuencia, dispuso que no procedía la desestimación peticionada por AIG Insurance puesto que, si eventualmente se determinase que el Colegio es responsable de los daños causados por sus actuaciones, la Aseguradora vendría obligada responder.

Inconforme, AIG Insurance acudió al Tribunal de Apelaciones. A pesar de que el foro apelativo intermedio declinó expedir el recurso, dejó claro que de la Demanda presentada por los Recurridos surgían alegaciones directas en contra del Colegio.

Hoy este Tribunal revoca estas determinaciones bien fundamentadas. Al así proceder, el criterio mayoritario arguye que la interpretación del foro primario en cuanto a que "[e]l argumento de que el lenguaje de la exclusión no le aplica al reclamo de contratación y supervisión negligente"[7] es errónea. Para ello, se recurre como fuentes persuasivas a cierta jurisprudencia de cortes estatales y federales que han adoptado una "interpretación expansiva"[8] del alcance de estas cláusulas de exclusión, la cual es totalmente contraria a nuestra firme línea jurisprudencial.

---

[7] Opinión mayoritaria, pág. 31.

[8] Íd.

Acto seguido, concluye que el "texto de la exclusión en controversia es claro y no da margen a dudas en cuanto a su significado. No existe ambigüedad ni obscuridad en su contenido"[9] por lo que la Aseguradora no está obligada a responder por los actos imputados al Colegio. **Disiento.**

Como cuestión de umbral, discrepo de la afirmación en cuanto a que el lenguaje de la cláusula de exclusión no da margen a diversos significados. Al contrario, nos encontramos ante un lenguaje que no es claro ni específico, el cual mucho menos va dirigido a excluir expresamente las presuntas acciones negligentes independientes del asegurado. Esto pues, no surge expresamente que mediante la exclusión 4 de la Póliza D&O se exceptuó de cubierta una alegación independiente de negligencia contra el Colegio en su rol de supervisar tanto a sus empleados como a sus estudiantes. Entiéndase, tal exclusión no surge expresamente de la cláusula 4 de la Póliza D&O.

En sintonía con lo anterior, resáltese que tampoco se desprende la conclusión que se teje en la Opinión mayoritaria en cuanto a que "la cláusula de inimputabilidad no impide que la conducta [de Ayala Monges] le sea atribuida al Colegio para fines de la exclusión".[10] Sobre esto, es menester precisar que aquí se le está reclamando al Colegio por un acto independiente al hecho criminal de Ayala Monges.

---

[9]Íd., pág. 33.

[10]Íd., pág. 30.

Por ello, respetuosamente, sostengo que tal inferencia es en extremo condescendiente a favor de la postura de AIG Insurance. Lo que es más, esta inferencia ejemplifica lo impreciso de la cláusula de exclusión respecto a si los actos negligentes del Colegio realmente están eximidos de cubierta. En consecuencia, reafirmo que, en cuanto al alcance de la exclusión, estamos frente a un lenguaje impreciso que se presta para diversidad de interpretaciones. S.L.G. Francis Acevedo v. SIMED, supra.[11]

Así las cosas, ratifico que, de conformidad con nuestra firme norma hermenéutica, en lugar de una interpretación expansiva debimos haber pautado una visión restrictiva del alcance de la cláusula de exclusión y haber resuelto como lo hicieron los foros recurridos: esta solo operaría contra aquellas reclamaciones relacionadas al asegurado que cometió el delito y las que le imputaban responsabilidad vicaria al Colegio. De modo que el ejercicio hermenéutico aplicable debió llevar a la Mayoría a concluir que las reclamaciones relacionadas a la **propia negligencia del**

---

[11]Véase, también lo resuelto por este Tribunal unánimemente en San Luis Center Apts. et al. v. Triple S Propiedad, 208 DPR 824 (2022) respecto a la ambigüedad de una cláusula de no transferencia de una póliza de seguro. Allí interpretamos el lenguaje contenido en una cláusula anti-cesión que establecía que "[y]our rights and duties under this policy may not be transferred without our written consent" era ambiguo porque no especificaba si esa prohibición aplicaba antes o después de ocurrir una pérdida que activara la obligación de indemnizar.

**Colegio** no quedan cobijadas por la cláusula de exclusión.[12] A fin de cuentas, no debemos favorecer interpretaciones sutiles que permitan a la Aseguradora evadir la responsabilidad contraída con su asegurado.

Sobre lo anterior, valga resaltar que el análisis predilecto por el criterio mayoritario representa solo una vertiente dentro de la glosa interpretativa en este tema.[13] Particularmente porque cuando, como en el caso ante nos, se alega un acto independiente de negligencia, el hecho de que también se haya incurrido en un acto excluido de cobertura no precluye necesariamente la cobertura del acto

---

[12]Adviértase que los presuntos actos negligentes del Colegio son de naturaleza independiente a los actos criminales de Ayala Monges. Esa dicotomía entre actos separados incurridos por cocausantes distintos es importante establecerla en nuestro análisis. Lo anterior, a la luz de lo resuelto en Viruet et al. v. SLG Casiano-Reyes, 194 DPR 271 (2015). En aquella ocasión, este Tribunal reconoció que una aseguradora vendrá obligada a responder por actos negligentes independientes a la conducta objeto de la cláusula de exclusión. Esto al expresar que:

> "[E]l riesgo del cual se protege a los asegurados a través de la póliza en cuestión comprende únicamente aquellos daños que ocurran como consecuencia de una conducta negligente del personal del Centro, pero que surjan de actos u omisiones **independientes a los servicios profesionales de cuido y supervisión que la empresa viene obligada a brindar** […]". (Negrillas suplidas). Íd., pág. 278.

[13]En ese sentido, comparto la postura esbozada por el compañero Juez Asociado señor Rivera García en su Opinión disidente en cuanto a no coincidir con el criterio mayoritario respecto a que la tendencia a nivel de todas las jurisdicciones estadounidenses conduce únicamente al resultado enunciado por la Mayoría.

negligente.[14] Nótese que no hay un criterio uniforme cuando convergen reclamaciones basadas en el daño producto del acto criminal en unión con otros a consecuencia de la negligencia de otro asegurado.[15] Ante tal hecho, nuestro deber era interpretar esta cláusula de forma **razonable y restrictivamente contra la Aseguradora con el objetivo de sostener la cubierta. Máxime cuando al interpretar una cláusula de exclusión hemos resuelto que esta debe ser clara, específica, libre de ambigüedades y detallar la situación o el riesgo que se excluye de forma tal que el asegurado este informado sobre los eventos particulares que quedarán fuera de la cubierta**. Maderas Tratadas v. Sun Alliance et al., supra, pág. 899.

Cónsono con esta postura, en Ritchie v. Turner, 547 S.W.3d 145 (Ky. Ct. App. 2018) la Corte de Apelaciones de Kentucky resolvió que las exclusiones insertadas en la póliza de seguro de responsabilidad civil de una Junta de Educación por daños ocasionados a consecuencia de un acto delictivo solo excluían al empleado agresor de la cubierta. Sin embargo, no se excluirían de esa cubierta a los demás

---

[14]Véase, Couch on Insurance, sec. 103:31. ("Where an independent act of negligence is alleged, the fact that an act excluded from coverage was also committed does not necessarily preclude coverage for the negligent act.").

[15]Íd. ("Some courts hold that claims based upon negligent supervision or hiring are covered, while other courts hold that the intentional-acts exclusion also operates to exclude coverage for negligent supervision or control of the wrongdoer.").

empleados por su posible negligencia al contratar, supervisar y no detectar la conducta antijurídica de su empleado. (**"As the trial court held,[…], only the criminal perpetrator is excluded from coverage. Any other employees of the Breathitt County Board of Education would still be covered if their negligent hiring, supervision, investigation, or other acts or omissions caused or resulted in a sexual offense. To put it another way, the administrators named in the underlying Breathitt Circuit Court case would be covered by this policy endorsement."**). (Negrillas suplidas). Íd., pág. 149.

De igual forma, en <u>Am. Family Mut. Ins. Co. v. Bower</u>, 752 F. Supp.2d 957 (N.D. Ind. 2010), una Corte de Distrito Federal de Indiana resolvió que una cláusula en una póliza de seguro que precluía de cobertura un acto ilegal de un asegurado, no eximía de cobertura a otro asegurado contra el cual se reclamaba responsabilidad civil por actos negligentes al no prevenir un acto ilegal de otro asegurado. (**"Accordingly, the court concludes that the sexual molestation, criminal acts, and intentional acts exclusions do not apply to preclude coverage under the Policies to the Bowers for their alleged negligence."**). (Negrillas suplidas). Íd., pág. 971.

De otro lado, en <u>Am. Fam. Mut. Ins. Co. v. Enright</u>, 334 Ill. App. 3d 1026, 781 N.E.2d 394 (2002), se determinó que cierta cláusula de exclusión no vedaba de cobertura una

reclamación por negligencia al contratar y supervisar a sus empleados instada contra un hospital por las acciones de un empleado que incurrió en agresión sexual contra una paciente. Particularmente, en este caso se resolvió que la causa de acción invocada pretendía responsabilizar al patrono-asegurado por su propia conducta negligente. ("**We conclude that the allegations of the underlying complaint at issue here unquestionably seek to hold NSU liable for its own negligent conduct, a claim that falls within, or potentially falls within, the scope of coverage under the terms of American's policy.**"). (Negrillas suplidas). Íd., pág. 401.

De los casos citados, queda claro que la Mayoría echó mano a una línea jurisprudencial que es contraria a las normas de hermenéutica locales e ignoró el Derecho comparado que apunta a la corrección del razonamiento de los foros recurridos. En consecuencia, se desechó una interpretación razonable y restrictiva de la cláusula de exclusión y, por el contrario, se forzó la conclusión errónea de que la Aseguradora podía negar cubierta por los propios actos negligentes del Colegio basado en la aludida cláusula de exclusión. Insisto en que los presuntos actos negligentes del Colegio son independientes al acto criminal de Ayala Monges.

En definitiva, considero impermisible que se libere a la Aseguradora de su deber de brindar cubierta a su

asegurado basado en una interpretación amplia de la cláusula de exclusión. El análisis mayoritario se aleja de nuestras normas de hermenéutica en el campo del Derecho de Seguros que nos requieren realizar una delimitación restrictiva de este tipo de cláusulas. No puedo avalar tal derrotero.

**IV**

Por los fundamentos antes expresados, reitero que este Tribunal no debió revocar la interpretación efectuada por los foros recurridos respecto al alcance de la cláusula de exclusión. En todo caso, nuestra intervención debió ser para pautar que la cláusula, tal cual redactada, no restringía de forma alguna el deber subsidiario de la Aseguradora de ofrecer cubierta a su asegurado. Ello, puesto que la reclamación en contra de la Puerto Rico Christian School está basada en la negligencia en su desempeño al momento de reclutar y supervisar a sus empleados, así como de procurar por el bienestar y la seguridad de sus alumnos.

En vista de que el criterio mayoritario es otro, respetuosamente **disiento.**

Luis F. Estrella Martínez
Juez Asociado